**SHEET METAL WORKERS' PENSION FUND, LOCAL UNION NO. 85, and C. Farrell Jones, M.L. Cannon, Larry F. Wilson, David M. McKenney, Murray Freeman, and Charles D. Corbett, as trustees of the aforesaid fund; Plaintiffs,**

v.

**ADVANCED METAL AND WELDING CORPORATION, Defendant.**

Civ. A. No. C85–3172A.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 22, 1986.

Randall A. Constantine, Elrod & Thompson, Atlanta, Ga., for plaintiffs.

Les A. Schneider and Jeffrey H. Lerer, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs, the Sheet Metal Workers' Local Union No. 85 Pension Fund and its sponsor[1], bring this action against defendant, Advanced Metal and Welding Corporation, to collect "withdrawal liability" under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001 *et seq.* Jurisdiction exists pursuant to 29 U.S.C. § 1451(c). Presently pending is defendant's motion for summary judgment.

## STATUTORY FRAMEWORK

Under ERISA as it was originally enacted, an employer who withdrew from an on-going multiemployer pension plan incurred a limited contingent liability payable to the Pension Benefit Guaranty Corporation, an independent corporation established within the Department of Labor. After extensive study Congress determined that this regulatory framework was inadequate to protect the participants in multiemployer plans and enacted the MPPAA in 1980 as the solution to the problem. *See Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502, 1503–05 (D.C.Cir. 1984).

The MPPAA provides, in pertinent part, that any employer who completely or partially withdraws from a multiemployer pension plan must pay to the plan a reasonable share of the plan's unfunded vested benefits. *See* 29 U.S.C. §§ 1381 and 1391. This amount is called the employer's "withdrawal liability". 29 U.S.C. § 1381(a).

A complete withdrawal is defined to occur when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). An employer, however, is not to be considered to have withdrawn from a plan solely because the employer "suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. § 1398(2).

When a withdrawal occurs, it is the duty of the plan's sponsor to determine the amount of the employer's withdrawal liability (by one of the methods provided for under 29 U.S.C. § 1391), notify the employer of the amount of the liability, establish a schedule for its payment, and demand payment in accordance with the schedule. 29 U.S.C. §§ 1382, 1399(b)(1).

If the withdrawing employer fails to make a scheduled payment, interest at the prevailing market rate accrues from the date payment was due. 29 U.S.C. §§ 1399(c)(3) and (c)(6). If the delinquency is not cured within 60 days of notification of delinquency, the sponsor may declare the employer in default and require immediate payment of the entire withdrawal liability plus accrued interest on the total

---

1. The plaintiff trustees are, as a group, the "plan sponsor" as that term is used in the statute under which this action is brought. 29 U.S.C. § 1002(16)(B).

outstanding liability from the date the payment was originally due. 29 U.S.C. § 1399(c)(5).

If the employer disputes the fact or amount of withdrawal liability due, the employer may, within 90 days of being notified by its withdrawal liability, request a review by the plan sponsor of its determination. 29 U.S.C. § 1399(b)(2)(A). The sponsor must then review its determination and notify the employer of the result. 29 U.S.C. § 1399(b)(2)(B). If the employer continues to dispute the sponsor's determination, either the employer or the sponsor may initiate an arbitration proceeding. 29 U.S.C. § 1401(a)(1). If neither party initiates arbitration, the amount demanded by the plan sponsor is due and owing pursuant to the schedule established. 29 U.S.C. § 1401(b)(1). If the payments are not forthcoming, the plan sponsor may sue for collection. *Id.*

If the dispute is submitted to an arbitrator, the arbitrator must presume that the sponsor's determination is correct unless the employer shows by a preponderance of the evidence that the determination was "unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A). If proceedings "to enforce, vacate, or modify" the arbitrator's award are commenced in district court pursuant to 29 U.S.C. § 1401(b)(2), the court must presume that the arbitrator's findings of fact are correct unless they are rebutted by a clear preponderance of the evidence. 29 U.S.C. § 1401(c).

**FACTS**

The multiemployer pension plan involved in the instant action is the Sheet Metal Workers' National Pension Fund. (Exhibit 1 to Crigler Affidavit, p. 10). Defendant, pursuant to a collective bargaining agreement with Local Union No. 85 of the Sheet Metal Workers' International Association ("the Union"), remitted monthly contributions to this plan throughout the term of the bargaining agreement (August 1, 1980, through July 31, 1982) and for two months thereafter while defendant and the Union were attempting to reach a new agreement. The last contribution to the plan by defendant was for the month of September, 1982. (Sorohan Affidavit, ¶ 7).

On September 4, 1984—two years after defendant's last contribution to the plan—the plan's sponsor notified defendant that it considered defendant to have completely withdrawn from the plan in October, 1982, and demanded that defendant pay a total of $71,420 as its MPPAA withdrawal liability pursuant to a schedule established by the sponsor. (Crigler Affidavit, ¶ 14; Exhibit 3 to Crigler Affidavit). The withdrawal date set by the sponsor was what the sponsor viewed as being the date defendant and the Union had reached an impasse in negotiations over a new bargaining agreement. (Cannon Deposition I, p. 124). Defendant has refused to pay the withdrawal liability assessed by the plan's sponsor, maintaining that it has not withdrawn from the fund but has merely suspended its contributions to the fund during a labor dispute. (Freeman Affidavit, ¶ 4;[2] Crigler Affidavit, ¶ 15).

Defendant did not request the sponsor to review its decision nor did it initiate arbitration. This lawsuit followed on June 5, 1985.

As one of its defenses, defendant invokes the labor dispute provision of the MPPAA, 29 U.S.C. § 1398(2). To properly evaluate this defense, the following additional facts are necessary:

After the collective bargaining agreement between defendant and the Union expired on July 31, 1982, defendant and the Union met seven times during the next four months in an attempt to reach another agreement. (Crigler Affidavit, ¶¶ 3, 7, 8). They also met on March 1, 1983, December

---

**2.** Defendant objects to this paragraph of the Freeman Affidavit on the ground that "there is no showing that it is based on personal knowledge of the affiant." As the affiant began his affidavit with a statement that he has personal knowledge of the facts contained in the affidavit and as he is a trustee of the pension fund in question and in the position to know defendant's purported reasons for refusing to pay the withdrawal liability calculated by the plan sponsor, the court rejects defendant's objection.

5, 1984, and January 21, 1985, each time discussing their differences regarding terms and conditions of employment for the sheet metal workers.[3] (*Id.*). The impasse in negotiations which arose sometime between July and December, 1982, has never been overcome, however. (Crigler Affidavit, ¶ 12).

On September 9, 1982, in the midst of the July—December negotiating period, the Union struck defendant. (*Id.*, ¶ 10). At some point in November, 1982, apparently after the impasse in negotiations had occurred, the Union withdrew its pickets and abandoned defendant as a union shop. (Hankins Affidavit, ¶ 4). The Union, however, never disclaimed its interest in representing the sheet metal workers employed by defendant. (Crigler Affidavit, ¶ 13; Cannon Deposition I, p. 58; Cannon Deposition II, p. 135; Blankenship Deposition, p. 39).

Defendant continued to operate its business as it did before the expiration of the 1980 bargaining agreement and before the strike, except that it operated with some strike replacements after 1982.[4] (*Id.*, ¶ 9). Four of the workers who had worked for defendant prior to the expiration of the bargaining agreement and the strike continued to work for defendant thereafter. (*Id.*, ¶¶ 9, 11).

There has never been a decertification election displacing the Union as the designated collective bargaining representative for the sheet metal workers employed by defendant. (*Id.*, ¶ 13; Blankenship Deposition, p. 39; Cannon Deposition I, p. 58). Defendant has never withdrawn its recognition of the Union as the collective bargaining representative of these workers. (Crigler Affidavit, ¶ 13; Blankenship Depo-

sition, pp. 38–39; Cannon Deposition I, p. 59; Cannon Deposition II, p. 119).

At various times during 1983 and 1984, defendant telephoned one of the plan's trustees and was told each time that the plan's liability for unfunded vested benefits was decreasing steadily. (Corbett Affidavit, ¶ 3). On October 17, 1985, defendant learned that the plan was fully funded as of December 31, 1984. (Exhibit 14 to Crigler Affidavit).

**DISCUSSION**

Defendant moves for summary judgment on plaintiffs' withdrawal liability claim on the ground that there is no genuine dispute that it merely "suspended" its contributions to the pension fund in question "during a labor dispute" and never withdrew from the fund for purposes of the MPPAA.

Plaintiffs oppose defendant's motion for four distinct reasons, each of which will be taken up separately.

*A. Failure to initiate arbitration*

Section 1401 of the MPPAA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of [Title 29] *shall* be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (Emphasis added). If no arbitration proceeding is initiated, the MPPAA provides that "the amounts demanded by the plan sponsor ... *shall* be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1) (Emphasis added).

---

**3.** Plaintiffs attempt to raise a question of fact about what transpired at the post–1982 meetings. Their attempt must fail for lack of admissible evidence to rebut defendant's evidence in this regard.

Plaintiffs also attempt to raise a question of fact as to defendant's motives in meeting with the Union in 1983, 1984 and 1985. Again, plaintiffs have failed to introduce evidence to support their attempt; plaintiffs' unsupported opinions as to defendant's motives are irrelevant. (*See*

Freeman Affidavit, ¶ 6; Corbett Affidavit, ¶ 3; Wilson Affidavit, ¶¶ 4, 5; Hankins Affidavit, ¶¶ 4, 5).

**4.** It is not clear how many strike replacements were hired. Plaintiffs contend that 11 of 15 pre-strike workers were replaced, however their evidence does not support this contention. (The Sorohan Affidavit relied on by plaintiffs shows the number of pre-strike workers but does not establish the number of replacements.)

Based on this language, plaintiffs argue that defendant has "waived" its right to challenge the correctness of the sponsor's determination that defendant withdrew from the plan in October, 1982. Defendant counters with the argument that exhaustion of the MPPAA arbitration remedy is not required when, as here, the dispute revolves around statutory interpretation.[5] There is case law to support both positions.

In support of plaintiffs' position, there is *Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. 122 (D.D.C.1984). In that case the defendant employers had opposed the plaintiffs' action to collect MPPAA withdrawal liability on the ground that they were engaged in a labor dispute within the meaning of 29 U.S.C. § 1398. The court, as an alternative reason for rejecting the labor dispute defense, held that the defendants had "forfeited their opportunity to contest the existence or the amount of their withdrawal liability because they blatantly ignored the clear statutory requirements for resolution of disputed withdrawal liability determinations." 597 F.Supp. at 126. As for the notion that the dispute was not appropriate for an arbitrator since it involved statutory construction, the court stated that "an arbitrator's responsibilities include the interpretation of the statutory language of the [MPPAA]" and thus that "an arbitrator could have determined whether a 'labor dispute' existed within the meaning of section 1398...." *Id.* at 127.

Other courts adopt the position advanced by defendant. Treating the issue as one similar to exhaustion of administrative remedies, at least two courts have decided that failure to exhaust the MPPAA arbitration remedy should be excused where requiring exhaustion would neither lead to the application of superior expertise nor promote judicial economy, such as where statutory interpretation underlies the dispute. *I.A.M. National Pension Fund v. Stockton Tri Industries*, 727 F.2d 1204, 1207–09 (D.C.Cir.1984); *I.A.M. National Pension Fund v. Schulze Tool & Die Co.*, 564 F.Supp. 1285, 1290–94 (N.D.Cal.1983). Critical to this view is a determination that Congress did not make arbitration a jurisdictional prerequisite in the MPPAA. 727 F.2d at 1208–09; 564 F.Supp. at 1292–93.[6]

Several other courts appear to have adopted this approach, albeit without stating the reasoning behind it. *See, e.g., Sunstar Foods, Inc. v. United Food/Commercial Workers' Pension Fund*, 5 E.B.C. 1349, 1352 (D.Minn.1984) [Available on WESTLAW, DCTU database] (available on Lexis) (arbitration not required because court would owe no deference to arbitrator's application of the law); *T.I.M.E.—DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund*, 580 F.Supp. 621, 633 (N.D.N.Y.1984), *aff'd* 735 F.2d 60 (2nd Cir.1984) (arbitration inappropriate when resolution of dispute requires statutory interpretation); *Paperworks Pension Plan v. Arlington Sample Book Co.*, 5 E.B.C. 1948, 1951 (E.D.Pa.1984) (same).

▮ Notwithstanding the clear language of the MPPAA mandating the resolution of "any dispute ... concerning a determination made under sections 1381 through 1399 of [Title 29]" through arbitration, 29 U.S.C. § 1401(a)(1), this court agrees that arbitration, not being an absolute jurisdictional requirement, should not be required "blindly or mechanically" without due regard for the purposes of the arbitration

---

5. Understandably, defendant does not argue that the present dispute does not fall within the arbitration provisions of the MPPAA. As the dispute concerns the sponsor's determination that defendant completely withdrew from the plan under 29 U.S.C. § 1383, there is no question that it is a dispute within the ambit of 29 U.S.C. § 1401. *See Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. 122, 126–27 (D.D.C.1984); *Sunstar Foods, Inc. v. United Food/Commercial Workers Pension Fund*, 5 E.B.C. 1349, 1352 (D.Minn.1984) [Available on WESTLAW, DCTU database] (available on Lexis); *I.A.M. Nat'l Pension Fund v. Schulze Tool & Die Co.*, 564 F.Supp. 1285, 1290 (N.D.Cal.1983).

6. Both decisions provide a thorough analysis of *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court decision which distinguished between exhaustion requirements that are "statutorily specified jurisdictional prerequisite[s]" and those that reflect jurisprudential concerns.

scheme. *I.A.M. National Pension Fund v. Schulze Tool & Die Co., supra,* 564 F.Supp. at 1293. Where a dispute concerning a withdrawal liability determination turns on the meaning of a certain provision of the MPPAA, there is no reason for requiring exhaustion of the arbitration remedy since an arbitrator's interpretation of the statute would be entitled to no deference. *See* 29 U.S.C. § 1401(c) (only arbitrator's findings of fact are presumed correct). Accordingly, this court will not require exhaustion in those circumstances.

Thus, in the instant action, where there is a dispute as to the meaning of the labor dispute provision of the MPPAA, the court will excuse defendant's failure to initiate arbitration proceedings and proceed with a consideration of defendant's labor dispute defense.

### B. *Burden of Proof*

■ Plaintiffs contend that the determination of the sponsor that defendant withdrew from the pension fund in October, 1982, should not be disturbed unless the decision was not supported by substantial evidence, was not based upon a consideration of relevant factors, constitutes a clear error of judgment, or constitutes an erroneous decision on a question of law. And, say plaintiffs, because defendant has introduced no evidence concerning the actions or deliberations of the plan sponsor, defendant has failed to meet its initial burden as movant for summary judgment.

Even accepting plaintiffs' assertions regarding the appropriate standard of review in an action by a plan sponsor to collect withdrawal liability where there has been no arbitration[7], the court must disagree with plaintiffs when they state that defendant has failed to introduce sufficient evidence of the sponsor's actions to warrant a consideration of its labor dispute defense. Defendant has produced evidence to establish the sponsor's withdrawal liability determination along with the facts pertinent

to that determination and that is all the court needs in order to decide whether that determination constitutes an erroneous decision of law as defendant claims.

### C. *Meaning of "labor dispute"*

To determine whether defendant "suspend[ed] contributions ... during a labor dispute" such that it cannot be deemed to have withdrawn from the plan pursuant to 29 U.S.C. § 1398," the court must first construe "labor dispute."

Although "labor dispute" is never defined in the MPPAA or ERISA, that term is defined in related federal labor legislation as "any controversy concerning terms or conditions of employment," 29 U.S.C. § 113(c) (Norris-LaGuardia Act), and, similarly, as "any controversy concerning terms, tenure or conditions of employment." 29 U.S.C. § 152(9) (National Labor Relations Act); 29 U.S.C. § 142(3) (Taft-Hartley Act). Defendant urges the court to give "labor dispute" the same meaning under the MPPAA, pointing out that the District Court for the Northern District of New York has already done so in *T.I.M.E.—DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund, supra,* 580 F.Supp. at 626–27.

Plaintiffs, on the other hand, would have this court define "labor dispute" for the purposes of the MPPAA essentially as any dispute in which the parties to that dispute continue to meet in "good faith" to resolve their differences. Plaintiffs believe that if a dispute has reached an impasse and "good faith" negotiations cease, the dispute has ended for purposes of withdrawal liability.

■ The court agrees with the reasoning of the *T.I.M.E.—DC, Inc.* court and accordingly construes "labor dispute" for purposes of the MPPAA to have the same meaning as that term has under the labor laws cited above. *See also T.I.M.E.—DC,*

---

**7.** The MPPAA sets out a standard of review for the arbitrator, 29 U.S.C. § 1401(a)(3)(A), and a standard of review for the court in reviewing an arbitrator's decision, 29 U.S.C. § 1401(c), but leaves unaddressed the standard of review for an action pursuant to 29 U.S.C. § 1401(b)(1).

*Inc. v. Trucking Employees of North Jersey Welfare Fund, Inc.,* 560 F.Supp. 294, 303 (E.D.N.Y.1983). As the District Court for the Northern District of New York stated:

> [The court cannot] ignore a cardinal rule of statutory construction requiring that the same term, when used to describe the same legislative concern in the same statutory title, should have a single meaning.... To attribute differing meanings to what were hoped to be compatible statutes could only do injury to the congressional scheme....

580 F.Supp. at 627.

The court also agrees with that court's remarks on the significance of an impasse in negotiations to the existence of a "labor dispute":

> As merely a stage in a labor dispute, there is simply no talismanic significance to the presence of an 'impasse'.... To the extent an impasse reflects an even more serious labor dispute, its existence speaks persuasively to the presence of a 'controversy.'

*Id.* at 629.

The court rejects plaintiffs' suggestion that a labor dispute terminates if one or both parties are engaged in bad faith bargaining. If anything, bad faith bargaining—like an impasse—signals the *existence* of a controversy.[8]

■ This said, the court concludes that the cessation of contributions by defendant to the plan was "during a labor dispute" since the Union and defendant have never reached a resolution of their disagreements regarding the terms and conditions of employment of sheet metal workers employed by defendant and the Union has not withdrawn or been displaced as the designated collective bargaining representative for those workers.

**D. Meaning of "suspension of contributions"**

The final question for the court in disposing of defendant's motion for summary judgment is whether defendant "suspended" contributions to the plan or "permanently ceased to have an obligation to contribute" to the plan.

Plaintiffs submit that defendant's cessation of contributions was "permanent" for the purposes of the MPPAA given that defendant's obligation to contribute ceased when its negotiations with the Union over a new bargaining agreement reached an impasse, no new obligation arose in over three years, and no new obligation was ever likely.

Defendant essentially argues that because the labor dispute between it and the Union never ended, its obligation to contribute to the plan did not permanently cease but was merely suspended until the labor dispute was resolved.

The court finds both arguments compelling. On the one hand, it seems inequitable to allow defendant to escape withdrawal liability when the labor dispute which precipitated the cessation in contributions by defendant appears to be "permanent"— that is, as if it is going to last forever—given the amount of time that has passed since an impasse in negotiations arose and given the apparent differences in the Union and defendant's positions. *Cf. Robbins v. McNicholas Transportation Co.,* 6 E.B.C. 1777, 1779 (N.D.Ill.1985) [Available on WESTLAW, DCTU database] (employer had not merely suspended contributions during a labor dispute because there were no on-going negotiations and there had been no movement on either labor or management's side for nearly two and a half years); *Combs v. Adkins & Adkins Coal Co., supra,* 597 F.Supp. at 126 (despite existence of labor dispute, circumstances suggested that employers had per-

---

**8.** The court does not intend to suggest that defendant has engaged in bad faith bargaining. The court notes that there is no evidence that the Union filed any unfair labor charges with the National Labor Relations Board, *see* 29 U.S.C. §§ 158(a)(5) and 158(b)(3), or any other admissible evidence of bad faith on defendant's part.

manently withdrawn from pension plan). On the other hand, speculation as to the permanency of the protracted labor dispute in this action may in the future allow the risk of incurring withdrawal liability influence labor-management negotiations when the employer has no intention of permanently withdrawing from the plan, a result Congress evidently intended to prevent when it enacted the labor dispute provision of the MPPAA. *See T.I.M.E.—DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund, supra,* 580 F.Supp. at 629; *I.A.M. National Pension Fund v. Schulze Tool & Die Co., supra,* 564 F.Supp. at 1295.

■ After much deliberation, the court has decided that the latter policy consideration must prevail; accordingly, the court concludes that if a cessation in contributions to a pension plan was precipitated by a labor dispute, the employer has not withdrawn from the plan, but merely suspended contributions to it, as long as the labor dispute continues and there is no evidence that the employer intended to permanently withdraw from the plan.

Applying this conclusion to the instant action, the court finds that defendant "suspended contributions ... during a labor dispute" and did not withdraw from the plan in question. There is absolutely no evidence that defendant intended to withdraw from the plan.[9] And, of course, it has already been established that the labor dispute between defendant and the Union has never ended.

## CONCLUSION

Having concluded that defendant "suspended contributions [to the pension plan in question] during a labor dispute" and did not "withdraw" from the plan within the meaning of the MPPAA, the court GRANTS defendant's motion for summary judgment.

9. Plaintiff argues that the hiring of strike replacements evidences defendant's intent to withdraw from the plan. The court disagrees. There is no evidence that defendant intended to

The Clerk is directed to enter judgment for defendant on plaintiffs' claims.

not re-employ those striking employees who were replaced in the event a new bargaining agreement (requiring plan contributions) was reached.