**COLES EXPRESS, Plaintiff,**

v.

**NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, et al., Defendants.**

**Civ. No. 86–0313–B.**

United States District Court,
D. Maine.

Dec. 19, 1988.

---

**3.** None of the delay was attributable to the Defendants. *See United States v. Alpert*, 816 F.2d at 964.

Lewis V. Vafiades, Bangor, Me., Jeffrey H. Lerer, Les Schneider, Atlanta, Ga., for plaintiff.

William R. Laney, Skowhegan, Me., Gabriel O. Dumont, Jr., Grady, Dumont & Dwyer, Boston, Mass., for defendants.

## MEMORANDUM OPINION AND ORDER ACCEPTING MAGISTRATE'S RECOMMENDED DISPOSITION

CYR, Chief Judge.

Coles Express requests a judicial declaration as to the date as of which it will be deemed to have withdrawn from the New England Teamsters and Trucking Industry Pension Fund [the Fund] established pursuant to the Employee Retirement Income Security Act of 1974 [ERISA], as amended by the Multiemployer Pension Plan Amendments Act of 1980 [the MPPAA]. The United States Magistrate recommends that summary judgment be granted in favor of the Fund on the ground that the MPPAA prescribes arbitration as a prerequisite to judicial proceedings in these circumstances. Coles Express objects to the recommended disposition, and the Fund moves to dismiss the objections as untimely.[1]

### I. Timeliness of Objections

On March 14, 1988, the Magistrate's recommended disposition was mailed to Coles Express. Ltr. to Counsel of Record from Clerk of Court (3/14/88 Civ. 86–0313–B). See Fed.R.Civ.P. 5(b). Coles Express filed its objections on March 30, 1988.

"Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1) (Supp.

---

1. The Fund moved to strike the Coles Express reply memorandum on the ground that neither the statute nor the Civil Rules provide for such a pleading. There is no question that a reply memorandum is not a pleading. Nor is there any question that the court may direct, or local rules may prescribe, the filing of reply memoranda in certain circumstances. The reply memorandum comports with Local Rule 19(d) (D.Me. Dec. 14, 1987) in that it is confined strictly to new matters raised in the opposing memorandum. The motion to strike is denied.

1988). *See also* Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Vega,* 678 F.2d 376 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980). Local Rule 28 states that "[f]ailure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court ..." Local Rule 28 (D.Me. Dec. 14, 1987).

Federal Rule of Civil Procedure 6(a) excludes intervening Saturdays, Sundays and legal holidays from the computation of a filing period of less than 11 days. Fed.R. Civ.P. 6(a). The Fund contends, without citation to authority,[2] that the allowed filing period in this case expired 13 days after the date of mailing, *see* Fed.R.Civ.P. 5(b), the recommended disposition; ten days are allowed under rule 72(b), *see* Fed.R.Civ.P. 72(b), and three additional days are permitted by rule 6(e) following mail service.

The interpretation proposed by the Fund contravenes the intent of the Federal Rules. Rule 6(e) plainly provides for the *enlargement* of a ten-day filing period so as to accommodate the increased delay almost certain to occur when service is made by mail. *See, e.g., Tushner,* 829 F.2d at 855; *Grandison v. Moore,* 786 F.2d 146, 149 (3d Cir.1986) (Even the "3–day period allowed for mail delivery reflects an optimism about postal service that regrettably no longer accords with our experience," *id.*) Whereas the application of the rule urged by the Fund would have the perverse effect

of allowing the same,[3] or not as much,[4] time to file objections to a recommended disposition served by mail as in the case of service made in hand.

The basic time period for filing objections to a magistrate's recommended disposition is ten days, Fed.R.Civ.P. 72(b), excluding the date of mailing and all intervening Saturdays, Sundays and legal holidays, Fed.R. Civ.P. 6(a). Three additional days are provided to a party who is served by mail. Fed.R.Civ.P. 6(e). Coles Express was allowed 17 calendar days after March 14 within which to file its objections to the recommended disposition, and it did so in timely fashion on March 30, 1988.

## II. *ERISA Arbitration*

The central issue in the case concerns the correct amount of the "withdrawal liability" to be assessed against Coles Express under the MPPAA, on account of the termination of its participation in a multiemployer pension plan sponsored by the Fund. Crucial to the issue is a determination of the date as of which Coles Express effectively withdrew from plan participation. The Fund asserts that withdrawal occurred in September 1982. Coles Express maintains that it was engaged in a labor dispute until March 14, 1984 and that no withdrawal liability attached until that date.

### A. *Facts and Procedural History*

Pursuant to a collective bargaining agreement with Locals 25, 340, 437 and 464 of the International Brotherhood of Team-

---

**2.** Although the issue appears to be one of first impression in the First Circuit, the Ninth Circuit soundly rejected a similar argument in *Tushner v. United States District Court,* 829 F.2d 853, 855 (9th Cir.1987) (jury demand served by mail) (Kennedy, J.) (citing *Nalty v. Nalty Tree Farm,* 654 F.Supp. 1315 (S.D.Ala.1987) (objections to magistrate's recommended disposition)). *See also Washington Int'l Ins. Co. v. United States,* 681 F.Supp. 883, 884 (Ct. Int'l Trade 1988) (construing similar provisions of Rules of U.S. Court of International Trade).

**3.** Had Coles Express been *served in hand* on March 14, 1988, its objections would have been due no later than March 28, *14* calendar days after service of the recommended disposition. Under the Fund's interpretation, although three additional days are to be allowed after service by *mail, see* Fed.R.Civ.P. 6(e), intervening Satur-

days and Sundays *would be counted,* which would mean that objections would have been due *13* calendar days after mailing the recommended disposition (on March 14), but for the fact that the last day for filing would have fallen on a Sunday, and rule 6(a) would extend the filing period through the next business day, *see* Fed.R.Civ.P. 6(a). Therefore, filing would have been required by March 28, just as would have been the case had service been effected in hand.

**4.** For example, if the recommended disposition had been mailed on Thursday, March 10, objections would have been due by March 23 (i.e. 13 calendar days after mailing), under the Fund's interpretation; whereas objections to a recommended disposition served in hand on March 10 would have been due not later than March 24 (i.e. 14 calendar days after the date of service in hand).

sters, Chauffeurs, Warehousemen and Helpers of America [the Union], Coles Express made contributions to the Fund for the benefit of Coles Express employees. The collective bargaining agreement expired on March 31, 1982, but Coles Express continued to make contributions to the Fund. During September of 1982, the Union struck Coles Express. On January 10, 1983, the Fund advised that it would no longer accept further contributions from Coles Express. On March 14, 1984, the National Labor Relations Board certified that the employees of Coles Express had voted to decertify the Union as their collective bargaining representative.

On March 16, 1984, the Fund served Coles Express with a "Demand for Payment of Withdrawal Liability." Coles Express requested that the Fund review its computations, for the reason that the Fund had applied an incorrect withdrawal date. Dissatisfied with the Fund's review, Coles Express requested arbitration of the dispute, and an arbitration hearing was scheduled for October 20–22, 1986. Before the arbitration hearing commenced, Coles Express requested, without objection by the Fund, that arbitration be stayed pending judicial determination as to whether the entire dispute had to be submitted to arbitration in the first instance.

On October 27, 1986, Coles Express commenced the present action for declaratory relief. Coles Express argues that the effective date of its plan participation withdrawal is purely a matter of statutory construction, which does not require arbitration, and that the court should resolve the issue before arbitration proceeds on other issues.[5] The Fund moved for summary judgment on the ground that Coles Express was required to submit the plan withdrawal issue to arbitration in the first instance. At the same time, the Fund counterclaimed for recovery of interim monthly payments of $42,753.

The United States Magistrate recommended that summary judgment be granted in favor of the Fund on the issue of arbitration, but that summary judgment be denied on its counterclaim. No objection having been filed to the recommended disposition of the motion for summary judgment on the Fund's counterclaim, the court undertakes *de novo* review of the recommendation that summary judgment be granted in favor of the Fund on the arbitration issue.

### B. *Statutory Framework*

Plan withdrawal liability is governed by ERISA, as amended by the MPPAA. ERISA represents a "comprehensive attempt to regulate the funding, management, operation, benefit provisions, and insurance of private employer pension plans." *Debreceni v. The Outlet Co.*, 784 F.2d 13, 15 (1st Cir.1986). *See generally Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720–25, 104 S.Ct. 2709, 2713–16, 81 L.Ed.2d 601 (1984) (*R.A. Gray & Co.*). ERISA represents a congressional response to "the 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 374, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980) (quoting Senator Bentsen, 3 Leg.Hist. 4793).

The MPPAA was enacted in 1980 to strengthen the protection of employers who remain in multiemployer plans. *Debreceni*, 784 F.2d at 16. Under the MPPAA, employers who withdraw from a multiemployer plan are liable for their proportionate shares of the unfunded vested benefits.[6] The MPPAA sets up a complex system for determining when withdrawal liability attaches. Complete withdrawal oc-

---

5. The Coles Express letter requesting that the Fund review its liability computations identifies seven other issues in contention, including the valuation of Fund assets and the actuarial assumptions used by the Fund in computing liability. Affidavit of Gabriel O. Dumont.

6. Prior to 1980, an employer was subject to withdrawal liability only if the pension plan failed within five years of withdrawal. *See R.A. Gray & Co.*, 467 U.S. at 721, 104 S.Ct. at 2713.

curs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a)(1)–(2) (1982). The obligation to contribute may arise under one or more collective bargaining agreements or "as a result of a duty under applicable labor-management relations law." 29 U.S.C. § 1392(a)(1)–(2) (1982). Under the MPPAA, certain transactions exempt an employer from withdrawal liability. *See, e.g.,* 29 U.S.C. §§ 1384, 1385(b)(2)(B), 1390, 1398 (1982). An employer is not considered "to have withdrawn from a plan *solely* because ... [it] suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. § 1398(2) (1982) (*emphasis added*).

The MPPAA prescribes elaborate dispute resolution procedures in the "recognition 'that the employer and the Plan may not always be in agreement as to the computation of withdrawal liability.'" *Mason and Dixon Tank Lines v. Central States, Southeast and Southwest Areas Pension Fund,* 852 F.2d 156, 159 (6th Cir.1988) (quoting *Marvin Hayes Lines v. Central States, Southeast and Southwest Areas Pension Fund,* 814 F.2d 297, 299 (6th Cir. 1987)). Upon withdrawal by an employer, the plan sponsor must calculate the amount of the withdrawal liability, establish a schedule for payment, notify the employer and demand payment according to the schedule. 29 U.S.C. §§ 1382, 1391, 1399(b)(1) (1982). If the employer disputes the determinations made by the plan sponsor, the first recourse is to ask the plan sponsor, within 90 days of service of the payment demand, to review its determinations. 29 U.S.C. § 1399(b)(2)(A) (1982). If the employer continues to dispute a determination after review, either the employer or the sponsor may initiate arbitration proceedings.[7] 29 U.S.C. § 1401 (1982).

Section 1401 provides in pertinent parts: "*Any* dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration," 29 U.S.C. § 1401(a)(1) (1982) (*emphasis added*); "[u]pon completion of the arbitration proceedings....any party thereto may bring an action, no later than 30 days after issuance of the arbitrator's award, in an appropriate United States district court," 29 U.S.C. § 1401(b)(2) (1982); and the party contesting the sponsor's determination under section 1381 through 1399 bears the burden of proving by a preponderance of the evidence that the determination was unreasonable or clearly erroneous, 29 U.S.C. § 1401(a)(3)(A) (1982).

## C. *Discussion*

 Coles Express advances two theories in support of its contention that the present dispute need not be submitted to arbitration in the first instance.[8]

First, Coles Express contends that judicial interpretation of the "labor dispute" exception in section 1398 falls outside the arbitration provision of section 1401. Section 1398 provides:

> Notwithstanding any other provision of this part, [§§ 1381–1405] an employer shall not be considered to have withdrawn from a plan solely because—
>
> . . . .
>
> (2) an employer suspends contributions under the plan during a labor dispute involving its employees.

29 U.S.C. § 1398(2) (1982). Section 1401(a)(1) states:

---

**7.** If neither party seeks arbitration, the amounts determined by the plan sponsor "shall be due and owing on the schedule set forth" in the demand for payment, and the plan sponsor may bring an action in state or federal court to recover payment. 29 U.S.C. § 1401(b)(1) (1982).

**8.** Coles Express further argues, without citation to authority, that the Fund waived its right to

object to judicial resolution of the arbitration issue by failing to object to a stay of the arbitration proceedings and by failing to file a motion to compel arbitration. But the Fund consistently has challenged the appropriateness of judicial action in the absence of arbitration, thus preserving its claimed right to arbitration in the first instance.

(1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of—

(A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or

(b) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

The parties may jointly initiate arbitration within the 180–day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

29 U.S.C. § 1401(a)(1) (1982).

Coles Express argues that the initial phrase of section 1395—"Notwithstanding any other provision of this part"—demonstrates that "matters under Section 1398 are to be treated differently than matters governed by other sections in that part [§§ 1381–1405] including Section 1401." Plaintiff's Memorandum in Support of the Objections to Magistrate Hornby's Recommended Decision, at 6. No authority is cited, and the court has discovered no support for this view.

As Coles Express concedes, no part of a statute should be read in isolation. Section 1398(2) must be harmonized with the foregoing sections governing the calculation of withdrawal liability and identifying certain employer actions which constitute withdrawal from a multiemployer plan, as well as the consequences of withdrawal. *See, e.g.,* 29 U.S.C. §§ 1381, 1383–1385, 1388, 1390, 1391. Section 1398(2) merely states an exception to those earlier sections as concerns when plan withdrawal liability attaches. In other words, "notwithstanding any other provision of ... part [1,]" section 1398 identifies circumstances in which an employer's failure to make contributions to a plan shall not be deemed a withdrawal from the plan; subsection 1398(2), the so-called "labor dispute" exception, being one example.

Section 1401 does not prescribe, or otherwise directly address, the criteria for ascertaining withdrawal liability. Rather, section 1401 prescribes a forum for resolving certain disputes: *"[a]ny dispute* between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* [first] be resolved through arbitration,"* 29 U.S.C. § 1401(a)(1) (1982) (*emphasis added*). The language of section 1401 could not be more straightforward. After a review by the plan sponsor, any continuing dispute concerning the interaction of section 1383 (governing complete withdrawal) and section 1398 (the "labor dispute" exception) must be resolved through arbitration. *Teamsters Pension Trust Fund v. Allyn Transportation Co.,* 832 F.2d 502, 505–06 (9th Cir.1987) (*Allyn Transportation*) ("Congress clearly intended exactly what [its] words import."); *Sheet Metal Workers' Pension Fund, Local Union No. 85 v. Advanced Metal and Welding Corp.,* 643 F.Supp. 1201, 1205 n. 5 (N.D.Ga.1986) ("Understandably, defendant does not argue that the present dispute [concerning the interpretation of section 1398] does not fall within the arbitration provisions of the MPPAA.... [t]here is no question that it is a dispute within the ambit of 29 U.S.C. § 1401.")

Next, Coles Express contends that even though disputes concerning withdrawal liability during a labor dispute generally are subject to arbitration under the MPPAA, the present issue is purely a matter of statutory construction; therefore, arbitration is not required.

It is well settled under the MPPAA that "arbitration is not a jurisdictional prerequisite for district court review." *Mason and Dixon Tank Lines,* 852 F.2d at 163; *I.L.G. W. National Retirement Fund v. Levy Bros. Frocks,* 846 F.2d 879, 886 (2d Cir. 1988) (*Levy Bros. Frocks*); *Robbins v. Admiral Merchants Motor Freight,* 846 F.2d 1054, 1056 (7th Cir.1988); *Central States, Southeast and Southwest Areas Pension Fund v. T.I.M.E.–D.C., Inc.,* 826 F.2d 320, 325–28 (5th Cir.1987) (*Central States*); *I.A.M. National Pension Fund Plan A. v. Clinton Engines Corp.,* 825 F.2d 415, 417

(D.C.Cir.1987) (*Clinton Engines*). Nonetheless, Congress has mandated that recourse be had first to arbitration, and not to the courts, for resolution of withdrawal liability disputes under sections 1381 through 1399. *See, e.g., Mason and Dixon Tank Lines*, 852 F.2d at 163; *Republic Industries v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 295 (3d Cir.1982). Arbitration serves as an important component of the MPPAA scheme for safeguarding the viability of multiemployer plans:

> Arbitration of withdrawal liability disputes substantially reduces the expenses incurred by multiemployer plans while it bears a burden that would otherwise fall on the federal courts. "[A]rbitration promotes judicial economy and judicial restraint, both because the arbitrator's decision may dispose of the suit, and even if one party appeals the arbitrator's decision, the court will have the benefit of the arbitrator's analysis." *Robbins v. Chipman Trucking, Inc.*, [693 F.Supp. 628] 8 Employee Benefits Cas. (BNA) 1251, 1258 (N.D.Ill.1986) ("*Chipman Trucking*") [Available on WESTLAW, DCT database].

*Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1248 (3d Cir. 1982) (footnote omitted). *See also Mason and Dixon Tank Lines*, 852 F.2d at 164; *Allyn Transportation*, 832 F.2d at 505–06; *Clinton Engines*, 825 F.2d at 427.

■ As Coles Express points out, the *judicial* doctrine of exhaustion is not without exceptions. Exhaustion of administrative remedies is not compelled where the policies it was intended to further are not implicated, as where there is no need for the superior expertise of an administrative body, where judicial economy would not be promoted and where the statutory scheme created by Congress would not be ignored. *T.I.M.E.–D.C. v. Management–Labor Welfare & Pension Funds*, 756 F.2d 939, 944–945 (2d Cir.1985) (*Management–Labor Fund*) (considering recourse to arbitration under section 1401 of the MPPAA). *Cf. Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981) (considering exhaustion under the Education for All Handicapped Children Act [the EAHCA]).[9] Thus, exhaustion may not be required where the pursuit of administrative remedies would be futile, *Ezratty*, 648 F.2d at 774, where a nonjudicial remedy would be inadequate to prevent irreparable injury, *T.I.M.E.–D.C., Inc. v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 560 F.Supp. 294, 302 (E.D.N.Y.1983) (*North Jersey Welfare Fund*) where the administrative remedy would be void, *id.*, where constitutional issues are involved, *id.*, or where the issue to be resolved constitutes a "pure matter of law as to which specialized administrative understanding plays little role," *Ezratty*, 648 F.2d at 774. *See also North Jersey Welfare Fund*, 560 F.Supp. at 302.

The application of the "statutory interpretation" exception under the MPPAA has divided the circuits. *See generally Rootberg v. Central States, Southeast and Southwest Areas Pension Fund*, 856 F.2d

---

**9.** The EAHCA is part of a "comprehensive system of procedural safeguards designed to ensure parental participation in decisions concerning education of their disabled children and to provide administrative and judicial review of any decision with which the parents disagree." *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 596, 98 L.Ed.2d 686 (1988). Section 615 prescribes a "carefully tailored" mechanism for dispute resolution. *Smith v. Robertson*, 468 U.S. 992, 1009, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984). First, the parents are *entitled* to a due process hearing at the administrative level. The hearing may be at a local or intermediate level, with a right of appeal to the state educational agency, or at the state level, depending on how the federal aid is paid to the state. 20 U.S.C. § 1415(a)–(c). "Any party aggrieved by the findings [at the final administrative review] shall have the right to bring a civil action ... in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(e)(1)–(2) (1982). The Supreme Court interprets this section to mean that "judicial review is normally not available until all administrative proceedings are completed, but ... parents may by-pass the administrative process where exhaustion would be futile or inadequate." *Honig*, 108 S.Ct. at 606; *Ezratty*, 648 F.2d at 774. *See also* note 12 *infra* (further discussion of exhaustion doctrine as developed in *Ezratty*). Unlike the MPPAA, however, the EAHCA contains no explicit *mandate* that nonjudicial remedies be exhausted prior to judicial review.

796, 801 (7th Cir.1988) (identifying circuit split but declining to "take sides in the dispute"). A "growing number" of circuits holds that "questions of statutory construction, standing alone, are not exempt from arbitration under the MPPAA." *Mason and Dixon Tank Lines*, 852 F.2d at 164. *See Allyn Transportation*, 832 F.2d at 504 ("questions of statutory interpretation are not excepted from arbitration under the MPPAA"); *Clinton Engines*, 825 F.2d at 418 [10] ("it should be beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration"); *Flying Tiger Line*, 830 F.2d at 1253–55 (quoting *Clinton Engines* ).[11]

The Second Circuit takes a somewhat different view. *See, e.g., Rootberg*, 856 F.2d at 801; *Management–Labor Fund*, 756 F.2d 939. In *Management–Labor Fund*, it held that section 1401 does not preclude judicial interpretation of the statute in advance of arbitration. The Second Circuit opined that the policies underlying the exhaustion doctrine were not implicated in *Management–Labor Fund* because (1) there were no issues of fact or of contract interpretation; (2) it was likely that the parties would seek judicial review of the

arbitration award; and, most significantly, (3) the particular provision involved, section 1415, was "outside the scope of those issues that Congress directed to the arbitrator," *id.* at 945.

Two recent decisions narrowly restrict *Management–Labor Fund*. In *Levy Bros. Frocks*, noting that *Management–Labor Fund* was a "rare case," the Second Circuit distinguished it on the ground that "the issues of statutory interpretation raised [in the present case] largely involve interpretations under sections 1381 through 1399, interpretations which we believe Congress envisioned would be made by the arbitrator in the first instance." 846 F.2d at 886.

Later, in *Park South Hotel v. New York Hotel Trades Council and Hotel Association of New York City, Inc., Pension Fund*, 851 F.2d 578 (2d Cir.) *cert. denied*, — U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988), the Second Circuit ["lest our decision be read as adopting the district court's rationale on this point," *id.* at 582] specifically addressed the district court ruling that no arbitration was required *where an issue of pure statutory interpretation was presented, see Park South Hotel v.*

**10.** In *I.A.M. National Pension Fund Benefit Plan C. v. Stockton TRI Industries*, 727 F.2d 1204 (D.C.Cir.1984), the District of Columbia Circuit held that the district court properly had entertained a prearbitration dispute involving pure issues of law. *Id.* at 1207. More recently, *Stockton* has been limited essentially to its facts. *See Clinton Engines*, 825 F.2d at 417–19; *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 69–70 (D.C.Cir.1987). *Stockton* was an "exceptional case," limited to the "particular circumstances" at issue, *Clinton Engines*, 825 F.2d at 417–418; namely, that the employer originally had sought arbitration but was "rebuffed by the plan sponsor," *id.*, and the issue of arbitration was raised by the sponsor for the first time on appeal, after the sponsor had lost in the district court. *Id.* In those unique circumstances, where all issues had already received a full hearing before the district court, the District of Columbia Circuit held that judicial economy would not be served by beginning the whole process over again with arbitration.

**11.** *But see Dorn's Transportation Inc. v. Teamsters Pension Trust Fund*, 787 F.2d 897 (3d Cir. 1986), in which pure issues of law were present-

ed and the Third Circuit did not compel prior recourse to arbitration. *Dorn's Transportation* "did not purport to set forth a black letter rule; [the court] merely found no abuse of discretion in the district court's decision to reach the merits." *Carl Colteryahn Dairy Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d 113, 123 n. 17 (3d Cir.), *petition for cert. filed*, 57 U.S.L.W. 3349 (1988) (No. 88–731); *Dorn's Transportation* was limited to its specific facts in *Flying Tiger Line*. *Colteryahn Dairy*, 847 F.2d at 123 n. 17; *Flying Tiger Line*, 830 F.2d at 1254. In *Dorn's Transportation*, the court had considered the "change in corporate structure" exception, which applies where the "employer ceases to exist by reason of a change in corporate structure described in section 1362(d)," 29 U.S.C. § 1398(1)(A) (1982). In limiting *Dorn's Transportation*, the Third Circuit pointed out that permitting the case to proceed prior to arbitration "did not contravene the clear mandate of MPPAA section 1401 to arbitrate disputes that arise under section 1381–1399," *Flying Tiger Line*, 830 F.2d at 1254, because the central issue to be resolved concerned the interpretation of section 1362(d), a section not included within the arbitration mandate of section 1401.

*New York Hotel Trades Council, et al.,* 671 F.Supp. 1000, 1005 n. 8 (S.D.N.Y.1987).

In the present case, we conclude that exhaustion of the arbitration remedy is not required because (1) this case presents no factual issues but only legal questions of statutory interpretation, (2) the parties agreed that arbitration was not required, (3) the suit was filed before the time for invoking arbitration had expired, and (4) judicial economy would not be served by remanding the case at this late stage for arbitration, which almost certainly would be followed by further judicial proceedings. We intimate no view on whether arbitration would be required in a case in which all of these factors were not present, or which involved some of these, and also other factors. *Cf. ILGWU Fund* (arbitration required) [Levy Bros. Frocks].

851 F.2d at 582.

Although the First Circuit has yet to rule on whether arbitration is mandatory in these circumstances under the MPPAA, *Ezratty* does indicate, at least in the absence of a legislative mandate of exhaustion of administrative remedies, that a balancing test is to be employed.[12] The District of Columbia, Third, Sixth and Ninth Circuits, on the other hand, have decided that "questions of statutory construction, standing alone, are not exempt from arbitration under the MPPAA," *Mason and Dixon Tank Lines,* 852 F.2d at 164 (citations omitted). Even applying the case-by-case approach of the Second Circuit, how-

ever, this court concludes that the plan withdrawal issue presented here must be resolved, in the first instance, through arbitration.

Congress could not have made itself more clear than it did in its section 1401 mandate that "any dispute" involving sections 1381–1399 "shall" first be resolved by arbitration. There is a "strong presumption that Congress expresses its intent through the language it chooses." *INS v. Candoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987) (citations omitted); *In re Application for Warrant to Seize One 1988 Chevrolet Monte Carlo and One 1987 Chevrolet Camaro,* 861 F.2d 307, 309 (1st Cir.1988). Disregarding so clear a congressional mandate also would entail abandonment of the statutory scheme specifically selected by Congress. *Accord Dorn's Transportation,* 787 F.2d 897; *Management Labor Fund,* 756 F.2d 939.

Second, pure issues of statutory interpretation are rare in ERISA cases. *See Flying Tiger Line,* 830 F.2d at 1255; *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Chicago Kansas City Freight Line,* 694 F.Supp. 469, 474 (N.D.Ill.1988). It is uncertain whether a factual *dispute* exists in the present case. Even though Coles Express maintains that there is no dispute about the factual predicate upon which an interpretation of the "labor dispute" exception would be made,

---

**12.** Although *Ezratty* ruled that exhaustion of administrative remedies was appropriate in the first instance, the First Circuit "believe[d]" that the judicially-developed exhaustion doctrine most aptly governed the case. *Ezratty,* 648 F.2d at 774 n. 4. (Three years later the Supreme Court noted that in certain circumstances the exhaustion of administrative remedies would not be required. *Smith,* 468 U.S. at 1014 n. 17, 104 S.Ct. at 3469 n. 17 (under the EAHCA)). *Ezratty* did not state hard and fast rules for determining when exhaustion is required. Rather, the First Circuit identified certain circumstances "in which application of the exhaustion doctrine will not serve [the] interests [it was intended to protect]." *Ezratty,* 648 F.2d at 774. The court held that "[w]hen the various interests served pull in the direction of exhaustion, it is required, but where they pull in differ-

ent directions, analysis of the particular case at hand is necessary." *Id.* at 775 (citing K. Davis, *Administrative Law of the Seventies* 446 (1976)). The present case in some measure implicates countervailing interests. On the one hand, the requested declaratory relief necessitates a statutory interpretation as to which the specialized expertise of an arbitrator is neither essential nor likely to be particularly helpful. On the other hand, the factual record upon which the judicial exercise in statutory interpretation would be undertaken has not been established, and it may well be that an arbitrator's experience and expertise in such matters would be important in the fact-finding process. Most importantly, of course, the EAHCA contains no such explicit congressional mandate of exhaustion as is found in the MPPAA. *Compare* 20 U.S.C. § 1415(e)(2) *with* 29 U.S.C. § 1401(a).

there is no *stipulation* of facts.[13] The facts may prove important in any application of the "labor dispute" exception. For instance, in *Bangor–Punta Corp. v. Trustee of New England Teamsters and Trucking Industry Pension Plan*, No. 81–1688–2 (D.Mass. Nov. 12, 1986) [1986 WL 13080] (LEXIS, Genfed library, Dist. file), the district court considered the circumstances leading up to the bargaining impasse, and the date on which it occurred, to be important in applying the "labor dispute" exception. *See also I.A.M. National Pension Fund C. v. Schulze Tool and Die Co.*, 564 F.Supp. 1285 (N.D.Cal.1983). Even courts which discount the significance of the date of impasse have considered the particular facts relevant to the bargaining relationship between the parties, facts which this court does not have before it. *See, e.g., T.I.M.E.–D.C., Inc. v. New York State Teamsters Conference Pension and Retirement Fund*, 580 F.Supp. 621, 623 (N.D. N.Y.), *aff'd*, 735 F.2d 60 (2d Cir.1984). The statutory language itself indicates that the surrounding facts may be important to the proper application of the "labor dispute" exception. Section 1398 provides that withdrawal shall not occur *"solely"* because a labor dispute causes a halt in contributions. 29 U.S.C. § 1398 (1982) (*emphasis added*). It therefore clearly appears that in some *unspecified circumstances* withdrawal may be found to have occurred even though the parties are engaged in a labor dispute.

Finally, arbitration in these circumstances promotes judicial economy and judicial restraint, two important policies implicated by the arbitration requirement. The risk of duplicative action, which was considered significant in *Park South Hotel* and *Management–Labor Fund*, is not implicated in the present case where a full hearing on the merits has not been had at any level. *Accord Stockton*, 727 F.2d 1204. Instead, judicial intervention prior to arbitration would invite piecemeal litigation, "a burden district courts can ill afford," *Chicago Truck Drivers*, 694 F.Supp. at 474. As Coles Express concedes, portions of the present litigation would proceed to arbitration even if this court were to determine the withdrawal issue at this juncture. Whereas the entire dispute conceivably could be resolved by arbitration in the first instance. Even if, as Coles Express foresees, the nonprevailing party were to seek judicial review of the arbitrator's decision, the court would have the benefit of the analysis of an arbitrator versed in labor and pension law, a full development of the factual issues, and hence a clearer focus on the remaining legal issues.

Accordingly, the Magistrate's Report and Recommended Decision is ACCEPTED.

It is hereby ORDERED that

1. the motion to dismiss plaintiff's objections to the Magistrate's Report and Recommended Decision is DENIED;

2. the motion to strike plaintiff's reply memorandum is DENIED;

3. Defendants' motion for summary judgment on its counterclaim for interim payments is DENIED;

4. Defendants' motions for summary judgment on the complaint for declaratory relief are GRANTED; and the present action is DISMISSED, without prejudice, for failure to proceed with arbitration in the first instance.

---

**13.** The *Fund's statement of undisputed facts* fails to cite to the record as required by Local Rule 19(b)(1).

 (1) In addition to the material required to be filed by this rule, upon any motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of the material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried.

Local Rule 19(b)(1) (D.Me. Feb. 12, 1985).