Douglas CARDENTE and Linda
A. Cardente, Plaintiffs,

v.

FLEET BANK OF MAINE, INC., Federal
Deposit Insurance Corporation and Recoll Management Corporation, Defendants.

Civ. No. 92–30–P–C.

United States District Court,
D. Maine.

Jan. 26, 1993.

John S. Campbell, Poulos, Campbell & Zendzian, Portland, ME, for plaintiffs.

Michael H. Hill, Kevin G. Libby, Monaghan, Leahy, Hochadel & Libby, S. James Levis, Drummond Woodsum Plimpton & MacMahon, Portland, ME, for defendants.

## MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM JUDGMENT

GENE CARTER, Chief Judge.

Now before the Court is Plaintiffs' Motion for Relief From Judgment and to Alter or Amend Judgment (Docket No. 32), filed on July 2, 1992. The motion, brought under Federal Rules of Civil Procedure 59(e) and 60(b), seeks relief from the Court's judgment of June 24, 1992, 796 F.Supp. 603. (Docket No. 31) dismissing the complaint as against all Defendants in accordance with the Court's orders of June 16, 1992, and June 24, 1992. (Docket Nos. 29 and 30). Defendants' Motions to Dismiss (Docket Nos. 6 and 16) had been granted by the Court pursuant to Local Rule 19(c) when Plaintiffs failed to file timely objections to the motions.[1] At the time of the Court's action, Local Rule 19(c) provided in pertinent part: "Unless within 10 days after the filing of a motion the opposing party files a written objection thereto, he shall be deemed to have waived objection."

The Court by endorsement (Docket No. 10) granted an enlargement of time from May 6, 1992, to May 27, 1992, for Plaintiffs *to file* their memorandum opposing the motion to dismiss of FDIC and RECOLL ("Memorandum I"). Plaintiffs filed Memorandum I on May 28, 1992. (Docket No. 22). With respect to Defendant Fleet Bank's motion, the Court had granted an enlargement of time to June 10, 1992, for Plaintiffs to file their opposing memorandum. ("Memorandum II") (Endorsement, Docket No. 24). Plaintiffs filed Memorandum II, (Docket No. 28), on June 15, 1992.[2]

In support of their motion to amend the judgment, Plaintiffs argue that their objections to both motions to dismiss were timely filed. Moreover, they assert that an interpretation of Local Rule 19(c) that allowed an "automatic judgment" against Plaintiffs under the circumstances in this case would be inconsistent with Federal Rules of Civil Procedure 12(b) and 41, as well as impermissible under Federal Rule of Civil Procedure 83. *See* Motion for Relief at ¶ 6. The Court must begin its analysis, therefore, by reexamining whether Plaintiffs' counsel violated Local Rule 19(c).[3]

### I. *Local Rule 19*

#### A. Objection to FDIC's and RECOLL's Motion

Plaintiffs state that Memorandum I, filed on May 28, 1992, was filed within an alleged three-day grace period "which counsel reasonably understood the Clerk's office afforded counsel in the ordinary course." Motion for Relief, ¶ 4, at 2.[4] De-

---

1. In its decision on the motion of the FDIC and RECOLL, issued June 16, 1992, the Court also found, in the alternative, that the complaint should be dismissed on the merits.

2. The Court will address below Plaintiffs' assertion that they actually delivered their Memorandum on June 10, 1992.

3. A motion to alter or amend judgment brought under Fed.R.Civ.P. 59(e), allows the court to modify its earlier disposition of a case when there has been a manifest error of law or fact or when newly discovered evidence requires such modification. *Lord v. Casco Bay Weekly, Inc.,* 789 F.Supp. 32 (D.Me.1992). This portion of Plaintiffs' motion, which seeks to show that the Court misapplied Local Rule 19 because of either a mistake of law or fact, is, therefore, properly brought under Rule 59(e).

4. On May 5, 1992, within the original response period, Plaintiffs filed an Objection to Motion to Dismiss of Defendants The FDIC and RECOLL Management Corp. *See* Docket No. 9. The Objection stated that they object to Defendants' Motion to Dismiss "on grounds as more fully set forth in a Memorandum of Law to be filed on the date as may be fixed by the Court." *Id.* At the same time, they filed a Motion for Enlargement Of Time To File Memorandum With Respect To Plaintiffs' Objection To Motion To Dismiss. *See* Docket No. 10.

Plaintiffs argue that the "deemed waiver" language in Local Rule 19(c) relates not to the filing of a memorandum but rather to the written objection. The Court disagrees. The language of Local Rule 19(c) is clear on this point:

Unless within 10 days after the filing of a motion the opposing party files a written objection thereto, he shall be deemed to have waived objection. *Every party filing an objection shall file with the objection a separate memorandum of law ...*

Local Rule 19(c) (emphasis added). *See also United Transportation Union v. Maine Central Railroad Co.,* 107 F.R.D. 383, 384 (D.Me.1985). As this Court concluded in *United Transportation Union:*

Rule 19(c) makes it clear that an objection is not complete unless a memorandum is filed

spite counsel's "understanding," the Court does not implicitly or explicitly provide any "grace period" for deadlines established in any of *its orders*, particularly those involving enlargements of prescribed time periods for the filing of responses to motions. Neither the federal nor the local rules provide such an extension in these circumstances.[5] Under local practice, three days are added to the ten-day time period *prescribed for objection to motions in Local Rule 19* to allow for receipt of the prior pleading by mail. *Grover v. Commercial Insurance Co.*, 104 F.R.D. 136, 138 (D.Me. 1985). The local practice, however, and the reasons underlying it, have long been clearly delineated in this District. As the Court stated in *Grover:*

> Under Local Rule 6(b) ... the filing to the Court of any paper constitutes a representation that a copy has been served upon the appropriate person. Since service is complete upon mailing under Fed. R.Civ.P. 5, in many instances parties will have no notice of the filing until arrival of the post containing service. Thus, the period actually available for the making of an objection is shortened where service is accomplished by mail. In order that responding parties might have the full ten days in which to object, the

Clerk's office routinely adds three days to the ten prescribed in Rule 19(c). The Court does not act until ten days from the date that the responding party could have been expected to know of the filing. The Court deems this practice necessary for fairness in light of the short response time under the rule.

*Grover*, 104 F.R.D. at 138.

It is obvious that this three-day addition to the ten-day response period prescribed by the Local Rule does not apply to cases like this one where the Court has already enlarged the period in which the response to a motion is to be filed by almost three weeks, specifically requiring *filing* of the subject document on a designated day. There is no need to be concerned either that the opposing party might not have known exactly when the motion was filed or that because of service of the motion by mail, the opposing party would not have the full ten days to respond. Moreover, fairness does not dictate that the opposing party have any more time than that already provided by the Court's enlargement order.

Despite counsel's unsubstantiated conclusion to the contrary, *see* Memorandum in Support of Motion for Relief from Judg-

---

along with it.... In this case Plaintiff requested and was granted an extension of time in which to respond to Defendant's motion to dismiss. Despite this extension, Plaintiff failed to file a complete objection before the time for such filing had passed. The Court will, therefore, grant Defendant Lamoille's motion to dismiss.

107 F.R.D. at 384.

In addition, Plaintiffs argue that they "advised the Court in detail as to the bases for opposing each motion to dismiss in other pleadings that were before the Court as of the time of the deadline for filing memoranda." Memorandum In Support Of Motion for Relief From Judgment and To Alter Or Amend Judgment ("Memorandum"), ¶ 4. Specifically, Plaintiffs had filed on May 15, 1992, an Opposition to Motion to Stay Discovery in response to the FDIC and RECOLL's motion to stay all discovery in this case until either 30 days after the date of this Court's ruling on their motion to dismiss or November 7, 1992. Despite Plaintiffs' assertion that "those other pleadings clearly were closely intertwined with the motion to dismiss," Reply Memorandum of Law in support of Plaintiffs' Motion for Relief from Judgment and to Alter or Amend Judgment ("Reply Memorandum") at 6, other

briefs filed by Plaintiffs in response to a different motion of Defendants do not vitiate the specific directive of Local Rule 19(c). *See Gideon v. Administrator, Small Business Administration*, 102 F.R.D. 604, 607 (D.Me.1984) ("[S]tatements made by counsel in the course of oral argument on other motions are not sufficient to comply with the requirement of the Rule."). It is *not* the burden of the Court to search the file to locate other briefs that would be helpful to the Court in its determination of a different issue. The Court finds unpersuasive Plaintiffs' argument to the contrary.

**5.** Fed.R.Civ.P. 6(e) provides for the addition of three mailing days to a period of time prescribed by the federal or local rules, by statute or by order of the Court, when a party is required to do some act within a prescribed period after the *service* of a paper upon the party and service is effected by mail. In this case, Plaintiffs, by the Court's order, were required *to file* their memorandum *by a date certain*, not within a prescribed period after the service of a notice or other paper upon the party. Thus, Fed.R.Civ.P. 6(e) clearly does not apply to provide a three-day "grace" period.

ment and to Alter or Amend Judgment ("Memorandum") at 4–5, the Clerk's office has no other policy concerning three-day grace periods. Counsel's *assumption* concerning a grace-period under the circumstances of this case was unreasonable. A Court-ordered deadline, based on an enlargement of time under Federal Rule 6(b), is exactly that—a deadline. The Court finds, therefore, as it did in its original Order, that Plaintiffs, by filing Memorandum I on May 28, when the Court had ordered it filed on May 27, have failed to comply with Local Rule 19(c).[6]

B. Objection to Fleet's Motion

The Court's docket reflects that Memorandum II, Plaintiffs' Response to Defendant Fleet's Motion to Dismiss, was filed on June 15, 1992. Plaintiffs' counsel, however, averred in support of the motion to alter or amend that he actually filed the memorandum on June 10, 1992, the deadline fixed by the Court when it granted Plaintiff's motion for enlargement of the response time under Local Rule 19.[7] Be-

cause of the serious nature of the conflict, the Court held an evidentiary hearing to determine when the pleading was actually filed.

At the hearing, John Campbell, Plaintiffs' counsel, testified that he hand-delivered Memorandum II and a transmittal letter to the courthouse on June 10, 1992. Mr. Campbell testified that when he arrived at the courthouse that day between 4:30 p.m. and 5:00 p.m., the Clerk's Office was closed, but he could see court personnel inside. He, therefore, put the documents under the door, as, he said, was suggested by a sign outside the door. Mr. Campbell stated that he remembered the date as being June 10, because he had been at a hearing in the Bankruptcy Court that day, where he had been trying to research Memorandum II while waiting to argue his bankruptcy motion. Mr. Campbell's billing records for this case indicate that he completed and filed a brief on June 10, and his secretary remembers preparing a brief that day and giving it to Mr. Campbell for hand-

6. Plaintiffs contend that, even if they have violated Local Rule 19(c), the Court's application of Local Rule 19 in this case would be inconsistent with Federal Rules 41(b) and 12(b). The Court disagrees with Plaintiffs' characterization of both rules.

In *McDermott v. Lehman,* 594 F.Supp. 1315, 1319 (D.Me.1984), the Court discussed the relationship of Rule 41(b) to Local Rule 19(c):

The Court need not consider the standards governing dismissal under Rule 41(b) because Plaintiff's attempt to recharacterize the Court's action under Local Rule 19(c) as a Rule 41(b) dismissal fails. The purpose of rule 41(b) is to safeguard against delay in litigation and harassment of a defendant. It provides a remedy, available by its terms to defendants only, for lack of diligence by plaintiffs. The very different purpose of Local Rule 19(c) is to ensure the orderly, efficient and expeditious management of the extensive motion practice of this Court.

The Court finds here, as it did in *McDermott, see id.* at 1319–20, that Federal Rule 41(b) is not inconsistent with Local Rule 19(c).

With respect to the alleged conflict between Local Rule 19(c) and Federal Rule 12(b), the Court is unpersuaded that its analysis in *McDermott* regarding Federal Rule 56 is applicable to Federal Rule 12(b) in the instant case. The Court in *McDermott* clearly articulated that the accommodation between Local Rule 19(c) and a federal rule applied exclusively to Federal Rule 56. *See also Jaroma v. Massey,* 873 F.2d 17, 20

(1st Cir.1989). Neither this Court nor the First Circuit Court of Appeals has required the suspension of Local Rule 19(c) where its violation results in a dismissal of a plaintiff's complaint under Federal Rule 12(b). *See Gideon v. Administrator, United States Small Business Administration,* 102 F.R.D. at 607–08. The Court will not do so here.

7. Mr. Campbell's Affidavit states in pertinent part:

On June 10, 1992, I personally hand-delivered to the U.S. District Court clerk's office Plaintiffs' memorandum ... I arrived at the courthouse shortly after the Clerk's Office had closed and placed the envelope containing memorandum under the door to the clerk's office. The lights were still on inside, and there were personnel walking about. I assumed based on my prior conversation with the Clerk's office, that the pleading did not have to be stamped in precisely on the day set forth under the Local Rules for filing.

Affidavit, ¶ 5.

He later states in his Affidavit:

I have no idea why the Court's record reflect[s] that the memorandum was not filed until June 15, 1992. I can only assume that somehow the document did not get stamped on the evening that I dropped it off, and somehow remained not stamped in until after the weekend.

*Id.,* ¶ 7.

delivery late in the day. The computer in Mr. Campbell's office also indicates that the last time Memorandum II was worked on was on June 10, 1992. Opposing counsel testified that he received Memorandum II in the mail on June 11.

Linda Jacobson, Chief Deputy Clerk for the Court, testified that there is a mail slot in the door of the reception area of the Clerk's Office with a sign telling the public to put hand deliveries *through the slot* when the office is closed. She also testified that the reception area of the Clerk's Office, where items placed in the mail slot enter into the Clerk's Office, is very small, with only about three feet of floor space between the door and the counter. The only furniture in the area is a small table and chair to the left of the door for visitors to sit at while examining documents.

Ms. Jacobson described the office procedure for handling hand-delivered pleadings arriving between 4:30 p.m., when the Clerk's Office closes, and 5:00 p.m., when the personnel leave. Before the intake clerk leaves at 5:00 p.m., she checks the floor in front of the mail slot to see if any pleadings have been filed. If there are any pleadings, she opens them, date and time stamps them using a machine, and distributes them to the appropriate docket clerks before she leaves. At counsel's request Ms. Jacobson determined from Court records and case files that several pleadings were received after 4:30 on June 10, and that two pleadings were date stamped as late as 4:50 p.m. on that day.

Ms. Jacobson also testified that the written Clerk's Office procedure dictates that the intake clerk check the floor in front of the mail slot when she arrives at work each morning to see if any pleadings were filed after office personnel left the previous evening. If any pleadings have been filed, she opens them and dates them with the previous day's date, using a hand date stamp.

The stamp used for this type of hand-delivery does not have the time.

Procedures for dealing with mailed filings were also described by Ms. Jacobson.[8] She stated that the mail generally arrives in a bundle in the morning. The intake clerk then takes it and opens each piece. If an envelope contains a pleading, she immediately inserts it in the machine for a time and date stamp. After examining Court data, Ms. Jacobson determined that on Monday, June 15, 1992, the day Memorandum II was stamped at 9:47 a.m., approximately 20 pleadings were stamped between 9:30 a.m. and 9:50 a.m. Ms. Jacobson indicated that the clustering of a large number of filings in the morning is consistent with their having arrived in the morning's mail.

Having heard the testimony of the witnesses, the Court finds that Memorandum II was filed on Monday, June 15, at 9:47 a.m., as its time and date stamp indicate. If, as Mr. Campbell testified, he deposited the pleadings in the mail slot between 4:30 and 5:00 p.m. on June 10, the Court finds that they would have been processed by the intake clerk before she left. The record demonstrates that the normal procedure was followed on that day since other pleadings were time and date stamped during the period when the office was closed but before the personnel left for the evening. The Court also finds that there is no possibility that someone looking for pleadings filed through the mail slot would have overlooked Plaintiffs' envelope. The reception area in the Clerk's Office where the mail slot enters is tiny and easily surveyed.

Assuming that Mr. Campbell is mistaken as to the hour of the hand-delivery of Memorandum II, the Court has no doubt that if it were delivered on June 10 after 5:00 p.m. it would bear the hand date stamp of June 10 because the clerk on finding the filing on the morning of June 11 would have hand stamped it with the previous day's date. While not as much evidence was

---

**8.** Ms. Jacobson also testified that hand-delivered pleadings which arrive during the hours the Clerk's Office is open for business are immediately opened and time and date stamped with the machine. After they are stamped, they are distributed to the docket clerks for processing.

Therefore, normal procedure for any pleading, whether it arrives by post or by hand-delivery during or after business hours, is for the pleading to be opened and stamped as soon as the intake clerk receives it.

presented to confirm that normal procedures were also followed on the morning of June 11, nothing suggests that they were not. Even if the documents had lain on the floor until after the office opened, undiscovered by Clerk's Office personnel, as soon as the packet or envelope of documents was discovered, the intake clerk, following normal procedures, would have opened it and date and time stamped it. Under that scenario, or if for some inexplicable reason the packet lay on the floor all day, and was only noticed by the intake clerk when she was leaving on June 11, Memorandum II would bear the time and date stamp for June 11.

Mr. Campbell's theory would have the Court find that he delivered Memorandum II to the Clerk's Office on Wednesday evening, June 10, 1992, that it remained undiscovered all of Thursday and Friday, and then was docketed, according to the date stamp, on Monday, June 15, 1992, at 9:47 a.m. Such a finding would entail subsidiary findings that the personnel in the Clerk's Office disregarded all their normal procedures beginning either Wednesday evening or Thursday morning through Monday morning. Ms. Jacobson testified that in her thirteen years in the office, she does not remember an occasion when a pleading has been lost in the Clerk's Office before being date and time stamped. Moreover, Ms. Jacobson testified that if a document had been misplaced and not processed properly, she would expect the incident to be related to her so that she and the Clerk could determine how properly to deal with the document. However, no one in the Clerk's Office mentioned anything to her with regard to Memorandum II's having been misplaced. As discussed above, the Court finds it highly unlikely that the packet remained on the floor all that time. Despite Plaintiff's argument therefore, it is totally implausible that the document was delivered, but remained lost in the Clerk's Office for five days, and the Court refuses to make such a finding.[9]

Strong circumstantial evidence indicates that Memorandum II arrived in the mail on the morning of June 15, 1992. It was time and date stamped in the middle of a large group of documents time and date stamped around the time the mail usually arrives in the Clerk's Office. While previous pleadings in this case had borne the legend HAND–DELIVERED when they were hand-delivered, this pleading did not. Moreover, it is clear that the copy of the pleading was mailed to opposing counsel on June 10th. The Court address on counsel's transmittal letter included a no-longer used (and long-discontinued[10]) post office box number, which might account for the delay in postal delivery. The Court finds, therefore, as it did in its original order, that Plaintiffs' response to Defendant Fleet's Motion to Dismiss was filed on June 15, 1992.[11] Since the response was untimely,

9. At the hearing much evidence was introduced concerning a pencilled number on the bottom of Memorandum II which did not correspond to the tabbed number on the pleading. Mr. Campbell theorized that the discrepancy indicated that the pleading had come in earlier than June 15. The Court is satisfied, however, both from the evidence presented concerning the computer docketing system and corrections made to it and from its own knowledge concerning the addition of new pleadings to a file in chambers, which this was, that the notation on the bottom of the pleading does not demonstrate that the pleading was received earlier than the time and date shown by the stamp.

10. The transcript of Ms. Jacobson's testimony mistakenly reflects that the post office box was given up on October 1, 1992, Tr. 67, although the substance of her testimony makes clear that the box had been given up well-before Mr. Campbell had filed his memoranda. The Court takes judicial notice of the fact that it discontinued use of the box on October 1, 1991, not 1992 as stated in the transcript.

11. With this finding, the Court has rejected the testimony of Attorney Campbell. Mr. Campbell testified that he does not have a present memory of the hand delivery of Memorandum II on June 10 but has reconstructed the event in his mind. The Court finds that Mr. Campbell is sincere in his belief that he hand-delivered the documents to the Court on June 10 and is not dissembling in order to gain an advantage for his clients. The Court is persuaded, however, that Mr. Campbell has misremembered the sequence of events in his attempt to reconstruct them and that they did not happen as he now thinks they did. One reason for this conclusion is that Mr. Campbell repeatedly testified to putting the memorandum "under the door" of the Clerk's Office, and testified to having a vivid

under Local Rule 19(c) Plaintiffs are deemed to have waived objection to the motion.[12]

## II. *Interests of Justice*

■ Relying on *Greene v. Union Mutual Life Insurance Co.*, 764 F.2d 19, 22 (1st Cir.1985), Plaintiffs argue that even if the memoranda were untimely, the "interests of justice" require relief from the judgment resulting here from the operation of Local Rule 19(c). Plaintiffs suggest that the Court use the interests of justice standard rather than determining whether they meet the criteria for excusable neglect required for relief from a final judgment under Rule 60(b).[13] Reply Memorandum Of Law In Support of Plaintiffs' Motion For Relief From Judgment And To Alter Or Amend Judgment at 1 n. 1). Since this case, unlike *Greene*, seeks relief from a final judgment rather than from an interlocutory order, the excusable neglect standard is the more appropriate. The Court need not choose between the two standards, however. As the Court of Appeals for the First Circuit has recently explained in a similar context, "the two standards

coalesce" for "[i]t would, after all, make very little sense to allow reconsideration because justice requires, only to reassess the underlying procedural default on some standard totally divorced from the interests of justice." *United States v. Roberts*, 978 F.2d 17, 21 (1st Cir.1992).[14]

■ Examining the Government's motion to reconsider its late-filed response to a suppression motion, the Court of Appeals in *Roberts* counseled that district courts involved in the same endeavor might consider seven factors. The list, described as illustrative rather than inclusive includes:

(1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying the tardiness, (4) the character of the omission, (5) the existence *vel non* of cognizable prejudice to the nonmovant in consequence of the omission, (6) the effect of granting (or denying) the motion on the administration of justice, and (7) whether the belated filing would, in any event, be more than an empty exercise.

*Id.* at 21–22.[15] The Court will examine the facts presented here in light of this teaching.

---

memory of putting the document under the door. Tr. 50. The Court finds it highly unlikely that anyone arriving after hours would put a document *under* the door. There is a mail slot in the door, at waist height, and a sign directing the public to put filings *through the slot.* The crack under the door is smaller and less convenient, since it requires bending down. Mr. Campbell's vivid memory of this unlikely detail gives the Court pause as to his other memories. The Court notes that Memorandum I, which bears the date only hand stamp of May 28, was hand delivered after 5:00 p.m., shortly before Memorandum II was due. The Court believes that Mr. Campbell is confusing the two filings in his memory and in his testimony.

12. Plaintiffs also raise the same arguments with respect to the operation of Local Rule 19 that they raised in defense of their late response to the motion of Defendants FDIC and RECOLL. Specifically they argue that timely filing of the objection without the memorandum suffices to meet the rule, that the Court had notice of the substance of the objection from other pleadings on a discovery motion, that operation of Local Rule 19(c) is inconsistent with Fed.R.Civ.P. 12 and 41, and that there is a "grace" period extending deadlines set by the Court in conjunction with a motion for enlargement of time. The Court need not elaborate again on its rejection of these arguments.

13. Plaintiffs have brought their motion under both Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. This portion of the motion, which is not addressed to the merits of the Court's decision but rather to a reconsideration of the operation of a procedural rule under the circumstances of this case, is properly brought under Rule 60(b).

14. In *Roberts*, a criminal case, the Court of Appeals vacated this Court's denial of a motion for reconsideration of its application of Local Rule 19(c). *Roberts*, 978 F.2d 17. The court in *Roberts* compared the interests of justice standard with the excusable neglect standard found in Fed.R.Crim.P. 45(b)(2), an analog of Fed. R.Civ.P. 6(b)(2). *Id.* at 21. In footnote 6 of *Roberts,* distinguishing *Greene,* the court intimated that the excusable neglect standard found in Rule 60(b) is the same as that found in Criminal Rule 45. Therefore, it would appear that it too can be viewed as "coalescing" with the interests of justice standard.

15. While listing these factors in its discussion of "the interests of justice equation," the court stated that "the excusable neglect standard, in a situation like this one, embodies a need to consider a matrix of factors not materially different from those we have canvassed in connection with the interests-of justice standard, *e.g.,* the

■ 1. *Nature of the Case.* This is a garden variety civil case seeking declaratory relief and damages from the FDIC and Fleet. Plaintiffs are commercial property developers. FDIC, as receiver, repudiated a lease entered into by its predecessor Maine National Bank, which had also financed the leased property. Fleet subsequently assumed some of the assets and liabilities of Maine National Bank from the FDIC. The questions presented concern the parties' obligations with regard to the lease and various loan transactions. The Court does not gainsay the importance of the suit to Plaintiffs. Obviously, however, this case does not have the same significant societal interest as a criminal case involving serious accusations of drug-dealing. *See Roberts.* The nature of the case does not weigh in Plaintiffs' favor.

2. *Degree of Tardiness.* Memorandum I was filed one day late. Memorandum II was filed five days late. The fact that the delays were brief favors Plaintiffs.

3. *Reasons for Tardiness.* Counsel's explanation for the tardiness of Memorandum I, that it was filed within a grace period, boils down to his misunderstanding of the operation of Local Rule 19. Since it appears from the computer records and the testimony of Mr. Campbell's secretary that Memorandum II may have been prepared for filing on June 10, its due date, and since Mr. Campbell asserts that it was filed that day, the only explanation the Court can discern for its late filing is negligence on the part of counsel who claims he delivered it.

As the Court of Appeals recognized in *Roberts,* "[i]n general, mistake or inadvertence as to the meaning of a rule is not a

sufficient reason to grant a belated application for more time." *Id.* at 24. The court then went on to excuse the Government's mistake as to the meaning of this Court's Local Rule 19(c) on the grounds that the rule and its application were ambiguous. The Court of Appeals in *Roberts* repeated its mantra that it "need go no further," in analyzing whether this Court should have reconsidered its decision under Local Rule 19. *Id.* at 25. It is plain, however, that the Court should have gone further for it apparently failed to examine and certainly failed to cite any of this Court's prior jurisprudence concerning Local Rule 19(c) and its application before it criticized the Court's "less-than obvious interpretation" and dismissed as "logogriphic" [16] the "meaning of the local rule and its interplay with the criminal rules." *Id.* at 24.

In this district, the importance, meaning, and operation of Local Rule 19 have long been established.[17] In 1984, after addressing a number of cases in which parties had failed to abide by Local Rule 19(c), the Court lamented that it sometime seemed "the requirements of Local Rule 19(c) are more honored in the breach than in their observance." The Court then restated its firm belief that "compliance with Local Rule 19(c) is indispensable to the orderly, efficient and expeditious management of the extensive motion practice of this Court." *Gideon v. Administrator, U.S. Small Business Administration,* 102 F.R.D. 604, 607 (D.Me.1984); *see also, e.g., Greene v. Union Mutual Life Insurance Co.,* 102 F.R.D. 598 (D.Me.1984), *vacated,* 764 F.2d 19, 22 (1st Cir.1985); *Picucci v. Town of Kittery,* 101 F.R.D. 767 (D.Me. 1984). The local bar quickly became aware

significance of the delay, ... prejudice to the other party, ... and bad faith...." *Roberts,* 978 F.2d at 24 (citations omitted). Although the Court had said it would analyze the lower court's rulings under both rubrics, it summed up its excusable neglect discussion merely by stating that examination of the interests of justice factors favor permitting the government to file its objection out of time. *Id.*

16. A logogriph is a "word puzzle, as an anagram or one in which clues are given in a set of verses." *American Heritage Dictionary,* 740 (2d College Ed.1982).

17. This Court has not specifically addressed the interplay between Local Rule 19(c) and Fed. R.Crim.P. 45. The Court of Appeals recognized that Rule 45 is virtually identical to Fed.R.Civ.P. 6 and therefore that decisions construing rule 6 are instructive in understanding the operation of the criminal rule. *Id.* at 24. This Court has had several opportunities to discuss the relationship between Local Rule 19 and Federal Rule 6 as reflected in the text.

that the Court was serious in its attempt to regularize local practice so that disputes could be resolved quickly and efficiently, thus achieving justice for more people, with far less expense.[18]

In 1985, in *Grover v. Commercial Insurance Co.*, 104 F.R.D. 136 (D.Me.1985), the Court had the opportunity to explain in detail the operation of Local Rule 19(c). In *Grover*, the Court made plain that the time periods of the Local Rule run, as the rule says they do, from the date of filing. The Court then explained that although Federal Rule of Civil Procedure 6(e) does not by its terms apply to Local Rule 19(c), the Clerk's Office, as a matter of fairness in local practice, "routinely adds three days to the ten prescribed in Rule 19(c)" in order to assure that the party responding to a motion would have adequate time to respond given the short response time under the Local Rule. *Id.* at 138.

Over the years the Court has carefully explained how the counting under the Federal and Local Rules is done. In *Coles Express v. New England Teamsters and Trucking Industry Pension Fund*, 702 F.Supp. 355 (D.Me.1988), Chief Judge Cyr explained, in a discussion of the deadline for responses to a recommended decision of the Magistrate, how this Court computes the extra three days allowed for mailing under Federal Rule of Civ.P. 6(e). In *Andrew Corp. v. Gabriel Electronics, Inc.*, 735 F.Supp. 24, 26 n. 1 (D.Me.1990), the Court again made clear, with citation to *Grover* and *Coles Express* exactly how Local Rule 19 operates:

Under local practice, three days are added to the time periods prescribed in Local Rule 19 to allow for receipt of the prior pleading by mail. *Grover v. Commercial Insurance Co.*, 104 F.R.D. 136, 138 (D.Me.1985). As previously expressed in *Coles Express v. New England Teamsters & Trucking Industry Pension Fund*, 702 F.Supp. 355 (D.Me.1988) (Cyr, J.), the Court concurs with a majority of courts that have calculated a party's total response period by beginning with the prescribed response period, excluding weekends and holidays, and then adding three mailing days. *See Tushner v. U.S. District Court*, 829 F.2d 853 (9th Cir. 1987); *National Savings Bank v. Jefferson Bank*, 127 F.R.D. 218, 222 and n. 7 (S.D.Fla.1989); *Nalty v. Nalty Tree Farm*, 654 F.Supp. 1315 (S.D.Ala.1987). *See also*, C. Wright and A. Miller, *Federal Practice and Procedure*, § 1171.

Published decisions of this Court were thus available to counsel in this case (as, the Court cannot resist observing, they were to the Government's counsel in *Roberts*) explaining how he should compute the deadline for filing the memoranda in opposition to Defendants' motions to dismiss.[19] The Court finds, therefore, that despite the Court of Appeals' description of the state of the law pertaining to Local Rule 19, there was no ambiguity as to its operation which could provide an acceptable reason for the tardiness in this case of Plaintiffs' memoranda or the basis for a finding of excusable neglect. Counsel clearly were on notice of the procedure.[20]

---

**18.** It has long been apparent to the Court that the longer cases languish on the docket, the more expensive they become to the parties, generally without any appreciable difference in outcome.

**19.** An unpublished (but now soon to be published) opinion available on Lexis contains the same information. *See United States v. Certain Real Property in Waterboro*, 812 F.Supp. 259 (D.Me.1991). The United States Attorney's Office was counsel in that case, which was resolved well before its deficient performance in *Roberts*. As in *Roberts* the United States was there disadvantaged in its litigation position by the application of Local Rule 19(c) as set forth in the text because the filing in question was

late by one day. One might well suppose, as does this Court, that at the time of the Court's action in *Roberts*, the United States Attorney's office was well aware of the jurisprudence of this District explaining the application of the rule. Such a conclusion makes puzzling, to say the least, the appellate "findings" in *Roberts* that the meaning of the rule was "logographic" and that Government's counsel there did not understand the rule.

**20.** Being cognizant of the Court of Appeals' criticism in *Roberts* of Local Rule 19(c) and its application, this Court has recently adopted amendments to the rule as the panel in *Roberts* invited the Court to do. It is anticipated that these will make clear in the text of the rule what

No excuse is offered for the negligence which must have been the real cause of the late filing of Memorandum II. The Court finds, therefore, that the reasons for the tardiness militate against finding that Plaintiffs should be allowed to file their memoranda late.

4. *The Character of the Omission.* The Court of Appeals in *Roberts* suggested that the Court should investigate the degree of culpability involved in a procedural default, "asking whether the omission was deliberate or accidental, grossly negligent or merely careless." *Roberts,* 978 F.2d at 23. The Court is satisfied that Mr. Campbell's making of assumptions about the operation of the Local Rules, inferring a non-existent grace period, where the Court has endorsed a motion explicitly requiring that a document be filed on a specific date, constitutes gross negligence. He is an experienced attorney, who, as a former Law Clerk to a distinguished former Chief Judge of this Court, now on the Court of Appeals, knows how to conduct the legal research which would have informed him that there was no legal basis for a belief in the existence of a grace period for a Court-ordered enlargement of time for filing Memorandum I.[21] Mr. Campbell is a frequent and able litigator in this Court who generally displays a high level of intellect, solid analytical skills, and competence in legal research. While the untimeliness of Memorandum I was due to gross negligence, as discussed above, the untimeliness of Memorandum II appears to be the result of simple negligence.

What the Court discerns here, *in toto,* is a pattern of untimeliness reflecting a very cavalier attitude on the part of Plaintiffs' counsel toward the Local Rules and court-imposed filing deadlines. Not once, but *twice* within a two-week period, Mr. Campbell failed to file memoranda in a timely fashion. Moreover, the deadlines breached represented substantial extensions by the Court of the time periods usually required for response by Local Rule 19. By filing memoranda haphazardly, paying little heed to deadlines, counsel forces the Court to adjust its schedule to conform to the vagaries of counsel's office practice and procedures. The Court routinely accommodates busy counsel when a motion for enlargement is timely filed and good cause is shown.[22] Clearly, however, given the volume of motion practice in this Court, such adjustment is not possible at the discretion of every counsel who practices before the Court. When the same counsel, who has already obtained enlargements of time, breaches the rules twice in two weeks in the same case, the Court is forced to the conclusion that the behavior is grossly negligent, bordering on the deliberate. The

the Court has clearly articulated in its prior opinions in cases cited in the text as to Local Rule 19's meaning and application.

The amended rule, effective as of February 12, 1993, provides:

(c) Objections to Motions

Unless within 10 days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection. The 10-day period prescribed herein shall be determined in accordance with F.R.Civ.P. 6(a) and the Clerk shall, in every instance, add 3 days to such period for the possibility that the service of the motion may have been accomplished by mail.

Any objection shall be filed in duplicate and shall include citations and supporting authorities and, except as provided in Rule 16(g), affidavits and other documents setting forth or evidencing facts on which the objection is based. The deemed waiver imposed herein shall not apply to motions filed during trial.

(d) Reply Memorandum

Motions shall be decided on the motion and opposition papers without the submission of a reply memorandum. No reply memorandum shall be filed unless the Court so requests. Any reply memorandum permitted shall be strictly confined to replying to the specific issues identified by the Court or, in the absence of such identification, to new matter raised in the objection of the opposing memorandum.

**21.** The record *in this very case* displays by Mr. Campbell's own conduct that he understood the computation of the time period under Local Rule 19(c) well enough to file on two occasions a request for enlargement of that time period and *to do it within the proper time period.*

**22.** The Court's published opinions make explicit this liberal policy of granting requests for enlargement made before the end of the response period. *See Gideon,* 102 F.R.D. at 607; *Picucci,* 101 F.R.D. at 769.

nature of the counsel's conduct, therefore, weighs against granting the motion to alter or amend judgment.

5. *Prejudice.* Defendants have not cited any prejudice to them resulting from Plaintiffs' late filings (and the Court cannot think of any) other than the obvious cost in time and money of having to litigate this motion to alter or amend. This fact weighs in favor of granting the motion.

6. *Institutional Interests.* In *Roberts* the Court of Appeals paid lip service to the trial court's "significant interest in the punctilious observation and strict enforcement of its procedural rules, including temporal requirements." *Roberts*, 978 F.2d at 17. Finding, however, no evidence in the record that delayed consideration of the suppression motion's merits would have burdened judicial resources or interfered with the court's administration of its docket, the court stated that because the case was in its embryonic stages, it should not be dismissed solely on the ground of a rather minimalistic period of inadvertent delay. *Id.*

Although the Court of Appeals apparently regarded the Court's inherent institutional interest as a throwaway in the interests of justice discussion, this Court does not. From the beginning of its strict enforcement of the rule, the Court has noted that

> [t]he requirements of the Rule form the administrative predicate for the action of the Court in deciding motions in the exercise of its judicial power and also for the administrative activities of the Clerk of Courts in managing the case load of the Court.... The Rule makes reasonable requirements aimed at facilitating the performance of these functions.

*Gideon v. Administrator, U.S. Small Business Administration*, 102 F.R.D. at 607, *citing Greene*, 102 F.R.D. at 598 and *Picucci*, 101 F.R.D. at 769. In *Picucci*, the Court made its institutional interest even clearer:

> In effectively processing the case-load of a busy docket, it is indispensable to the Court's function that counsel take responsibility to respond to the local rule's demands as a matter of routine. Such a requirement is nothing other than a rationally-based compromise between the interest of litigants and their counsel and the needs of this Court to have reasonably prompt notice of contest on matters which require its substantive action and the administrative attention of the Office of the Clerk.

*Picucci*, 101 F.R.D. at 769.

The Court's strong institutional interest in being able to rely in its judicial and administrative functions on certain behavior by counsel should be clear without further specific reference to the institutional interest in a specific case. The Court can state that its current practice is to have files sent to it when a motion is in order for action. A motion for which the response date has passed without any filing is ready for the Court's attention.[23] It is the Court's practice to formulate its research after reading the briefs of counsel. If one party has not filed a brief, the Court's approach and research strategy may well be different than that undertaken if an opposing brief is filed. Thus, if the brief is late filed, as it was here, the Court may well have wasted valuable time in analysis that would have been differently directed had the brief been on time.

If "rather minimalistic period[s] of inadvertent delay," *see Roberts*, at 23, are regularly permitted under the local rule, the rule loses its meaning and its effectiveness in ensuring "the orderly, efficient, and expeditious functioning of the motion practice of the Court." *Carey v. M.S.A.D. #17*, 754 F.Supp. 906, 924 (D.Me.1990), *quoting United Transportation Union v. Maine Central Railroad Co.*, 107 F.R.D. 383, 383–84 (D.Me.1985). The Court should not have to wait to begin its work to see if perhaps a brief will be filed late. How

---

**23.** When an opposition to a motion is timely filed, the Court may or may not wait until the reply brief is filed before beginning its research of the issues presented. Of course, it waits for the reply brief before issuing any decision. Under the new Local Rule 19, effective February 12, 1993, reply briefs will be permitted only on request of the Court.

many days should it wait? If it should wait five days past the filing deadline, why not eight? If eight, why not ten? This possibility of infinite regress emphasizes the Court's need for a general policy of punctilious observation and strict enforcement of its procedural rules occasionally leavened by exceptions supported by a clear showing of excusable neglect or needless interference with the interests of justice. *See, e.g., Springer v. Seaman,* 658 F.Supp. 1502, 1506 (D.Me.1987); *Spickler v. Dube,* 626 F.Supp. 1092, 1096 (D.Me. 1986). The Court's institutional interest in Local Rule 19, therefore, weighs *very heavily* in favor of not allowing Plaintiffs to file their untimely memoranda.

7. *Utility of the Pleading.* In considering this factor, the Court is invited to make an assessment of Plaintiffs' likelihood of success should the untimely raised arguments be accepted. In its first opinion on the FDIC's motion to dismiss, the Court addressed the merits of the motion and found that Plaintiffs would have lost the case on the merits of the motion even if their response had been timely filed. The Court notes that in the late-filed Memorandum II, responding to Fleet's motion to dismiss, Plaintiffs rely heavily on and adopt by reference the arguments made in Memorandum I, their response to the FDIC motion. Although Plaintiffs make some other arguments, they state that Fleet's motion principally implicates the same legal issues that were raised by the FDIC. The court surmises, therefore, that the proffered opposition will not be any more successful than was the late-filed opposition set forth in Memorandum I. Since the utility of Plaintiffs' pleadings is highly doubtful, this factor militates *strongly* in favor of denying Plaintiffs' motion for relief from judgment.

8. *Recapitulation.* Four of the factors considered, the unjustifiable reasons for the delay, the serious nature of counsel's omission, the Court's institutional interests, and the lack of utility of the late pleadings, weigh very heavily against finding either that justice requires the granting of Plaintiffs' motion for relief from judgment or that their untimely filing was the result of excusable neglect. On the other hand, two of the factors weigh in Plaintiffs' favor: the slight delay in filing and the lack of prejudice occasioned by the delay. The final factor, the rather pedestrian nature of this civil case, does not add weight to Plaintiffs' side of the scale. Having weighed the various factors suggested by the Court of Appeals in *Roberts,* the Court is persuaded that counsel's failure to file timely memoranda in opposition to Defendants' motions to dismiss was not the result of excusable neglect. Consideration of the same factors also convinces the court that the interests of justice do not require the Court to grant the requested relief from judgment.

Accordingly, the Court DENIES Plaintiffs' Motion For Relief From Judgment And To Alter Or Amend Judgment with respect to all Defendants.

SO ORDERED.