USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1148 YVONNE RAMSDELL, Plaintiff - Appellant, v. ERSKINE BOWLES, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] _____________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Schwarzer,* Senior District Judge. _____________________ _____________________ Ralph A. Dyer, with whom Law Offices of Ralph A. Dyer, P.A., _____________ __________________________________ was on brief for appellant. Stephen G. Morrell, with whom Judy A.S. Metcalf and Eaton, __________________ _________________ ______ Peabody, Bradford & Veague, P.A., were on brief for appellees. ________________________________ ____________________ August 30, 1995  ____________________ * Of the District of Northern California, sitting by designation. ____________________ -2- SCHWARZER, District Judge. Yvonne Ramsdell brought suit SCHWARZER, District Judge ______________ against Machias Savings Bank and its directors (collectively the Bank ) alleging claims arising out of a series of loan transactions in which the Bank provided financing to Ramsdell Construction Company ( Ramsdell ), owned by Mrs. Ramsdell s husband and son. Because Mrs. Ramsdell alleged a violation of the Equal Credit Opportunity Act (the ECOA ), 15 U.S.C. 1691- 1693 (1988), the district court had jurisdiction over that claim under 28 U.S.C. 1331 and over the supplemental state law claims under 28 U.S.C. 1367. Mrs. Ramsdell now appeals the district court s grant of the Bank s motion for summary judgment. We have jurisdiction under 28 U.S.C. 1291 and affirm. Ramsdell Construction Company was engaged in the construction business in Machias, Maine. In 1989 and 1991, it obtained loans from the Bank to finance its operations. In early 1992, having defaulted on the loans, Ramsdell decided to obtain additional financing to enable it to complete a construction project for which it had a contract with the Town of Lubec, Maine. The Bank agreed to make the loan on the condition that the loan would be guaranteed by the Small Business Administration (the SBA ) and that Mrs. Ramsdell would also sign a personal guarantee. This loan, sometimes referred to as the SBA loan, closed in June 1992. Meanwhile Ramsdell continued work on the Lubec project with interim financing from the Bank. At the closing, $75,000 of the loan proceeds was used to set off advances the Bank had made in the interim to finance the work. -2- Notwithstanding this infusion of funds, Ramsdell defaulted on the Lubec contract in the fall of 1992 and went into bankruptcy. Foreclosure proceedings were brought in the state court against Mrs. Ramsdell and others who were borrowers or guarantors of the loans. Apparently, discovery taken in the state court action was later used by the parties in the instant action. PROCEDURAL BACKGROUND PROCEDURAL BACKGROUND The complaint, filed on April 14, 1994, alleged that the Bank had violated the ECOA (Count I), breached the loan agreement with Ramsdell (Count II), interfered with plaintiff s and Ramsdell s advantageous relationships (Counts IV, VI and VII), violated its duty of good faith and fair dealing (Count V), and acted negligently (Count VIII). It also alleged that individual defendants had aided and abetted the breach (Count III) and had interfered with advantageous relationships (Counts IV and VII). Additional counts have been abandoned on appeal. Originally, the complaint also named the SBA as a defendant; however, the claims against the SBA were later dismissed. The Bank filed a motion for summary judgment on November 2, 1994. Mrs. Ramsdell moved for an extension of time to file her opposition until November 21, 1994 (the date on which it would have been due, in any event, under Local Rule 19(c) of the District of Maine). She filed her opposition on November 22, 1994, one day late. On December 2, 1994, the Bank moved to strike the opposition as untimely and further asked that certain marked material be struck as immaterial or as barred by an -3- earlier confidentiality order issued by the court. On December 6, 1994, the magistrate judge granted the motion to strike, before objections had been filed; on December 8, 1994, he filed his recommended decision granting summary judgment. After receiving the objections, the magistrate judge treated them as a motion for reconsideration, which he denied by order of December 12, 1994. Mrs. Ramsdell then filed a brief seeking de novo _______ review of the magistrate judge s recommended decision; on January 3, 1995, the district court issued its order adopting the recommended decision and granting judgment for the Bank. THE MOTION TO STRIKE THE MOTION TO STRIKE In his initial order granting the motion to strike, the magistrate judge, relying on the court s inherent power to enforce its rules, concluded that although the court is usually generous to those who miss by slight amounts various limitations on pleadings . . . Plaintiff s response to the Motion for Summary Judgment is properly stricken. (R. 102.) The magistrate judge found that a chart Mrs. Ramsdell offered in support of the opposition was not authenticated and ha[d] no evidentiary value  and that the opposition was replete with immaterial, irrelevant and prejudicial statements. (R. 100-01.) On reconsideration, the magistrate judge applied the seven factors we suggested district courts examine when exercising their discretion in ruling on a motion for reconsideration of a dismissal order entered due to a plaintiff s failure to file a timely opposition to a motion, viz:  -4- (1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying the tardiness, (4) the character of the omission, (5) the existence vel non of ________ cognizable prejudice to the nonmovant in consequence of the omission, (6) the effect of granting (or denying) the motion on the administration of justice, and (7) whether the belated filing would, in any event, be more than an empty exercise. United States v. Roberts, 978 F.2d 17, 21-22 (1st Cir. 1992). _________________________ Acknowledging the district court s great leeway in the application and enforcement of its local rules, we held in Roberts that a refusal to grant relief on reconsideration is _______ reviewed for abuse of discretion. Id. at 20. In making ___ discretionary judgments, a district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales. Id. at 21. ___ We are satisfied that the magistrate judge gave appropriate consideration to each of the relevant factors. First, we note that here, unlike in Roberts, there was no _______ question about Local Rule 19(c) s interpretation or its application to the facts of the case. Compare Roberts, 978 F.2d _______ _______ -5- at 19-20. Although Mrs. Ramsdell argued in her reply brief that her opposition was in fact filed in a timely manner under Local Rule 19(c) and Fed. R. Civ. P. 6(a), she waived that argument both by failing to raise it in the district court and by failing to raise it in her opening brief on appeal. See, e.g., Aetna __________ _____ Casualty Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1571 (1st Cir. ___________________________________ 1994) (appellant failed to preserve issue for appeal by failing to raise it at trial and by failing to raise it in opening brief on appeal); Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d ___________________________________________ 1, 3 (1st Cir. 1983) (arguments not presented in initial brief on appeal are waived).1 Moreover, we note that Mrs. Ramsdell was represented by Maine counsel who was on notice that Local Rule 19 was being strictly enforced and that neglect was not an acceptable excuse. See Cardente v. Fleet Bank of Maine, Inc., 146 F. Supp. 13, 20-22 ___ _____________________________________ (D. Me. 1993); Winters, 812 F. Supp. at 4; Greene v. Union Mut. _______ ____________________ Life Ins. Co. of Am., 764 F.2d 19, 23 (1st Cir. 1985) (district ____________________ court reasonably found breakdown of counsel s office procedures not an adequate excuse for late filing).  ____________________ 1 Even if Mrs. Ramsdell had preserved the issue of whether her opposition was in fact timely filed under Local Rule 19(c) and Fed. R. Civ. P. 6(a), her application of the rules is incorrect. Regarding the operation of Local Rule 19(c), the District of Maine has previously held that although the prescribed 10-day response period excludes weekends and holidays per Fed. R. Civ. P. 6(a), the three-day mailing period does not. See, e.g., __________ Winters v. F.D.I.C., 812 F. Supp. 1, 4 (D. Me. 1992). The three ___________________ extra days for mailing objections filed pursuant to Local Rule 19(c) are "clearly calendar days." Id. Mrs. Ramsdell s argument ___ that her opposition was due November 22, 1994, depends on a calculation that excludes weekend days from the three-day mailing period. Thus her argument fails. -6- Finally, Mrs. Ramsdell failed to show that she suffered prejudice as a result of the magistrate judge striking her opposition to the motion for summary judgment. The magistrate judge acted pursuant to Local Rule 19(c), which states in relevant part: Unless within ten (10) days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection. Following the interpretation of Local Rule 19(c) previously explicated by the District of Maine in F.D.I.C. v. Bandon ____________________ Assocs., 780 F. Supp. 60, 62 (D. Me. 1991), the magistrate judge _______ ruled that the penalty embodied in Rule 19(c) amounts to only a limited waiver: [A] failure to respond to a Motion for Summary Judgment does not amount to a waiver of Plaintiff s objection . . . . [A] party who fails to object in a timely fashion is deemed to have consented to the moving party s statement of facts to the extent that statement is supported by appropriate record citations. (R. 103, citation and internal quotation marks omitted.) And, as the judge further observed, summary judgment is appropriate only if the record before the court establishes that the moving party is entitled to judgment as a matter of law. See Winters, 812 F. Supp. at 2. Therefore, the striking of Mrs. ___ _______ Ramsdell s opposition did not bar her from obtaining a favorable ruling based on issues of law presented by the motion if she was entitled to one. Moreover, had the judge ignored disputed material issues of fact as a result of striking the opposition, -7- she could have called them to our attention in her brief on appeal; but she failed to do so.  We conclude that the magistrate judge did not abuse his discretion in striking the opposition. THE SUMMARY JUDGMENT THE SUMMARY JUDGMENT We turn then to review of the judgment below on the merits, pursuant to the applicable de novo standard of review. _______ E.H. Ashley & Co. v. Wells Fargo Alarm Services, 907 F.2d 1274, ________________________________________________ 1277 (1st Cir. 1990). The ECOA Violations The ECOA Violations ___________________ Count I of the complaint alleges that the Bank violated the ECOA by demanding that Mrs. Ramsdell guarantee each of the three loan transactions between the Bank and the Ramsdells. The ECOA makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction--(1) on the basis of . . . marital status . . . .  15 U.S.C. 1691 (a)(1) (1988). The first two loan transactions in which the Bank demanded guarantees from Mrs. Ramsdell occurred in 1989 and 1991; thus, the alleged violations based thereon occurred more than two years before Mrs. Ramsdell filed her complaint. See Farrell v. Bank of N.H.--Portsmouth, 929 F.2d ___ _____________________________________ 871, 873 (1st Cir. 1991) (violation deemed to occur when lender makes demand for spouse s signature). The ECOA provides that no . . . action shall be brought more than two years from the date of the occurrence of the violation . . . . 15 U.S.C. 1691e(f) (1988). -8- Mrs. Ramsdell does not dispute that the statute has run but argues that equitable tolling is available under the ECOA to avoid an onerous two year limitation period . . . .  (Appellant s Br. at 32.) As we noted in Farrell, however, _______ Congress in 1976 extended the limitations period from one to two years to afford claimants a reasonable time to bring an action. Farrell, 929 F.2d at 874. In light of Congress deliberate _______ exercise of its judgment regarding what is a reasonable time limit, that limit should not lightly be circumvented as onerous. While equitable tolling may be available in a proper case, see ___ id., the mere fact that plaintiff has let the time to file run is ___ not sufficient to invoke equitable intervention. Mrs. Ramsdell has come forward with no facts on which equitable intervention might be grounded. The third loan transaction took place in May 1992, within the two year period. At the closing, the Bank required Mrs. Ramsdell to sign both a note evidencing the loan and a guarantee. The regulations issued by the Board of Governors of the Federal System interpreting the ECOA provide in relevant part that a creditor shall not require the signature of an applicant s spouse . . . on any credit instrument if the _______ applicant qualifies under the creditor s standards of _________________________________________________________________ creditworthiness for the amount and terms of the credit _________________________________________________________________ requested. 12 C.F.R. 202.7(d)(1) (1992) (emphasis added). _________ The district court found that Ramsdell and Mr. Ramsdell were not qualifie[d] under the creditor s standards of creditworthiness -9- for the amount and terms of the credit requested. (R. 107, 175.) The court based this finding on three observations: (1) that the Bank had issued notices of default on the 1989 and 1991 loans; (2) that the Bank had insisted that $75,000 of the 1992 SBA loan be applied to the defaulted loans; and (3) that there was no evidence to the contrary. Id.  ___ Mrs. Ramsdell now challenges the court s finding on two grounds. First, she argues that there was no question of creditworthiness because the $75,000 payment was intended to cover the Bank s risk under the new loan. But the complaint itself alleges that the existing loans had an outstanding principal balance of $900,000, and the Bank s directors authorized the additional working capital line only on the condition that the Bank s overall loss exposure not be increased. Given that exposure, Ramsdell s lack of creditworthiness was an issue not reasonably disputable.  Second, citing 12 C.F.R. 202.2(p), Mrs. Ramsdell argues that the burden of proving lack of creditworthiness was on the Bank. But that section defines credit scoring systems and says nothing about the burden of proof under the ECOA. Section 202.7(d)(1) triggers liability under the act by specifying the condition under which it is unlawful to require the signature of an applicant s spouse, viz, when the applicant is creditworthy. We do not read that section as creating an affirmative defense for banks premised on their proving lack of creditworthiness. Thus, the burden was on Mrs. Ramsdell to come forward with proof -10- that Ramsdell and Mr. Ramsdell were creditworthy. She offered none. Breach of Contract Breach of Contract __________________ Count II of the complaint alleges that SBA loan proceeds were improperly diverted by the Bank for its benefit in breach of the loan agreement. The loan agreement, by its terms, unambiguously provided that interim financing utilized for the [Lubec contract and working capital] may be repaid from loan proceeds. (Complaint 36.) The court determined that interim financing referred to the $75,000 that the Bank had advanced to Ramsdell prior to the closing of the loan to enable Ramsdell to continue work on the Lubec contract. If interim financing was intended to exclude the $75,000 advance, the burden was on Mrs. Ramsdell to come forward with facts creating a triable issue. She did not do so. Aiding and Abetting Breach of Contract Aiding and Abetting Breach of Contract ______________________________________ Count III charges the Bank s directors with authorizing and directing the diversion of the $75,000. In view of our disposition of the diversion claim, this claim also fails. Interference with Advantageous Contractual Relations Interference with Advantageous Contractual Relations ____________________________________________________ Count IV alleges that the Bank interfered with Mrs. Ramsdell s contract with the SBA by wrongfully diverting proceeds from the SBA loan. In view of our disposition of the diversion claim, this claim fails. Breach of Contract -- Bad Faith Breach of Contract -- Bad Faith _______________________________ -11- Count V alleges that the Bank violated its duty of good faith and fair dealing owed to Mrs. Ramsdell by diverting proceeds from the SBA loan and interfering with Ramsdell s financial affairs. Maine recognizes that the Uniform Commercial Code imposes a duty of good faith and fair dealing on banks, requiring honesty in fact in the conduct or transaction concerned. First NH Banks Granite State v. Scarborough, 615 ______________________________________________ A.2d 248, 250 (Me. 1992); see also Diversified Foods, Inc. v. ________ ___________________________ First Nat. Bank of Boston, 605 A.2d 609, 614 (Me. 1992) (no ___________________________ evidence that banks acted dishonestly, with ulterior motives, or for anything other than business reasons in exercising their rights under the loan agreement ). No facts appear here to support a claim that the Bank acted dishonestly or otherwise improperly with respect to its contract with Mrs. Ramsdell. Interference with Advantageous Contractual Relations Interference with Advantageous Contractual Relations ____________________________________________________ Counts VI and VII allege interference with the contractual relations between Ramsdell and the Town of Lubec. Mrs. Ramsdell argues, in her reply brief, that these counts are tort actions for interference with a property right. They are not claims for breach of contract. (R. Br. 21.) But she has failed to establish a property right of her own in the contract between Ramsdell and the Town of Lubec to support such a claim. See Harmon v. Harmon, 404 A.2d 1020, 1024 (Me. 1979) (requiring ___ _________________ proof that plaintiff, but for tortious interference of another, . . . would in all likelihood have received a gift or a specific profit from a transaction . . . . ). Lacking such proof, she -12- attempts to rely, presumably by analogy, on third party beneficiary principles, claiming to be a beneficiary of the Lubec contract. Under Maine law, however, a person must demonstrate that she is an intended beneficiary of a contract to maintain an ________ action for its breach. F.O. Bailey Co. v. Ledgewood, Inc., 603 ___________________________________ A.2d 466, 468 (Me. 1992) (emphasis added). The Ledgewood court, _________ following the Restatement (Second) of Contracts 302, held that it is not enough for a plaintiff to show that she benefitted from a contract; she must come forward with evidence of a clear and definite intent on the promisee s part that the plaintiff receive an enforceable benefit under the contract. Id. No such ___ evidence has been offered here.  Negligence Negligence __________ Count VIII makes two allegations: (1) that the Bank negligently underestimated Ramsdell s cash requirement, thereby causing the SBA to lend Ramsdell less than the SBA would have been willing to lend and ultimately causing Ramsdell s business to fail; and (2) that Mrs. Ramsdell executed the guarantee in reliance on the Bank s representations that the Lubec contract would generate sufficient cash to repay the SBA loan. As interpreted in her brief, the count alleges a failure by the Bank to prepare cash projections, a business plan, and loan analysis in a professional manner. While those allegations might withstand a motion to dismiss, in opposing a motion for summary judgment the adverse party may not rest upon the mere allegations . . . of the . . . adverse party s pleading but . . . -13- must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Her brief offers none. AFFIRMED. AFFIRMED -14-